Warren McALPINE, Jr., a Minor, by his mother and Next of Friend, Mrs. Warren McAlpine, Sr., individually and on behalf of all others similarly situated; Cassandra Davis, a Minor, by her mother and Next of Friend, Mrs. Mary Davis, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Robert REESE, individually and in his official capacity as Corporation Counsel for the City of Detroit; Johannes Spreen, individually and in his official capacity as Police Commissioner for the City of Detroit; Jerome P. Cavanaugh, individually and in his official capacity as Mayor of the City of Detroit, Defendants.

Civ. A. No. 34113.

United States District Court,
E. D. Michigan, S. D.
Feb. 10, 1970.

John Houston, Robert Slameka, S. Mac Gutman, James R. Short, Detroit, Mich., for plaintiffs.

William P. Doran, Asst. Corp. Counsel, Detroit, Mich., for defendants.

## OPINION

TALBOT SMITH, District Judge.

The Bill of Complaint before us, relying upon 28 U.S.C. § 1331, § 1343(4), § 2201, § 2202, 42 U.S.C. § 1983, "and the Constitution of the United States, and more particularly the First and Fourteenth Amendments thereto," and pleading a class action under Rule 23 of the Federal Rules of Civil Procedure, prays that we issue a temporary restraining order, restraining described parties from "continuing the presently pending criminal prosecution against plaintiff McAlpine for alleged violation of Detroit Municipal Code, § 39–1–57 (1954), and from arresting and prosecuting plaintiff McAlpine under § 39–1–57 (1954) in the future," that we declare the ordinance "unconstitutional and null and void on its face or as applied to the conduct of plaintiffs and their classes," that we preliminarily and permanently enjoin described parties from either continuing the presently pending prosecution of plaintiff McAlpine, or of arresting and prosecuting him in the future, for violation of such ordinance, and from "threatening or using" the ordinance against plaintiff Davis (a high school student) "and the members of the class she represents." The action and pleadings, it will be observed, are patterned upon *Dombrowski* in the lower courts.[1]

The plaintiffs, in substance, urge that the ordinance involved (hereinafter quoted) is "unconstitutionally vague and overbroad and hence the statute (sic) should be declared void." The plaintiffs also urge that the ordinance is being used for purposes of threat (of criminal prosecution) and thus of "harassing" plaintiffs in the exercise of conduct constitutionally protected.

Argument was heard upon the issue of the alleged overbreadth and unconstitutionality on its face of the ordinance under consideration on January 29, 1970. The matter was then recessed until February 2 for further hearing. At the call of the case on this date, the Court was informed on the record that the plaintiffs were dropping their claim for injunctive relief and that "our case proceeds purely against the statute (sic) on its face."

Although it was argued that "there is no necessity for an evidentiary hearing or findings of fact as to the nature of the conduct of plaintiffs," nevertheless the bill of complaint alleges that "the Detroit Municipal Code is unconstitutional on its face and as applied," which language necessitates the details of its application. Moreover, with respect to the "vagueness" argument, the conduct of the plaintiffs was found, in *Dombrowski* (380 U.S. p. 491, 85 S.Ct. 1116), to have a relevance. Consequently, testimony was taken upon the circumstances of the disturbance with respect to which the ordinance was sought to be applied and, although there was much conflict as to what had actually happened, we find the following to be a reasonably accurate portrayal thereof, bearing in mind that it is not our function herein to pass on the guilt or innocence of plaintiff McAlpine.

At about 9:30 on the morning of October 17, 1969, while school was in session, a group presented itself at the front door of the school for the purpose of a conference with the school authorities. This group, it was testified, was composed of parents of students, former students "who had previously left the school because of a demonstration walk out" and others, not identified. They were met at the door by the Chief of Security for the Detroit Board of Education, as well as a uniformed officer of the Detroit Police force who had been assigned to the school, and others. The parents were admitted for purposes of

1. Dombrowski v. Pfister, 227 F.Supp. 556 (D.C.1964).

conference and entry to the balance refused. The others remained outside. Violent conduct shortly ensued as this group re-demanded entrance and were refused. As the officers opened the doors to admit incoming students, the closing thereof was forcibly resisted by members of the group. There was kicking on the doors, banging thereof, and vocal disturbance. Unsuccessful in these efforts, the group then proceeded to a side door, yelling as they went, urging the students then in school, some of whom had opened their windows and were looking out and listening, to join their number, and demanding their admission. (We do not overlook, in these findings, the testimony of one teacher that she observed no disturbance.) At the side door someone broke out a panel of glass and the door was presumably opened from the inside. Here the entrants were met by a teacher who, as well as Officer Stewart, ordered their departure. The Chief of Security, Mr. Potts, feeling that the situation had gotten "*too far out of hand*" called for police intervention about 10:30 in the morning. Plaintiff McAlpine's arrest followed.

This case is one of *Dombrowski's* [2] progeny, although it goes beyond *Dombrowski* in that here the criminal action as respects plaintiff McAlpine for violation of the ordinance had already begun, his trial, in fact, having been scheduled for only a short time subsequent to the filing of suit in this court. In view of plaintiffs' withdrawal of prayers for injunction, we do not face the controversy re the use of the injunctive process in this type of case [3] which has so seriously divided the lower federal courts,[4] and which has created vast confusion in an area (criminal law) which, above all others, should not be vulnerable to jurisdictional and procedural delays.

*Dombrowski* involved threatened prosecutions under the Louisiana Communist Propaganda Control Law and the Subversive Activities and Communist Control Law. It was alleged not only that the statutes were unconstitutionally vague and overbroad, but that the real purpose of the prosecutions was to discourage civil rights activities. The Supreme Court reversed the three-judge district court's dismissal of the complaint. The majority, speaking through Mr. Justice Brennan, held the statutory definition there found of a "subversive organization" to be invalid as unconstitutionally vague. It was held, also, that the registration requirement of the law was "unconstitutional on its face" due to a presumptive provision not in conformity with Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S. Ct. 624, 95 L.Ed. 817 (1951). The Court held, in addition, that the allegation of bad faith prosecutions sufficiently stated a claim under the Civil Rights Act.

We will, accordingly, rule on the case before us in the light of *Dombrowski*. The ordinance before us, enacted some fifteen years ago, and hence obviously not "aimed" at recent disturbances in this city, provides as follows:

> "No person shall wilfully or maliciously make or assist in making any noise, disturbance, or improper diversion by which the peace, quietude or good order of any public, private, or parochial school is disturbed." [5]

█ The plaintiffs argue that the words "disturbance" and "improper diversion" are unclear. Cases are cited criticizing such words as "breach of the peace," "good order," "peace," and similar terms. But of this kind of semanticism there can be no end. No word has an intrinsic content. It gets meaning

2. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

3. 28 U.S.C. § 2283; 42 U.S.C. § 1983.

4. E. g., Cooper v. Hutchinson, 184 F.2d 119 (3rd Cir. 1950); Smith v. Village of Lansing, 241 F.2d 856 (7th Cir. 1957); Baines v. Danville, 337 F.2d 579 (4th Cir. 1964).

5. Detroit Municipal Code, Section 39–1–57 (1954).

and contour from its context, from its association, and from its commonly understood usage. The thought expressed in the term "fast horse" is not the same as that in the term "fast woman" despite the similarity in terminology. This is well illustrated by the cases upon which plaintiffs themselves rely. *Dombrowski*, for example, involved an indictment for violation of a statute which made it criminal to assist in the formation of, or to contribute to the support of, any subversive organization. Thus anyone even furnishing counsel, moral or material, to such party members might be held presently or at some time in the future to have assisted or supported the organization. Similar considerations were found in the *Baggett* oath.[6] In sum, the *Dombrowski* court considered "excessively broad Louisiana statutes regulating expression itself—the Louisiana Subversive Activities and Communist Control Law and Communist Propaganda Control." Cameron v. Johnson, 390 U.S. 611, 618, 88 S.Ct. 1335, 1339, 20 L.Ed. 182. Here, on the contrary, we have an ordinance narrowly regulating certain conduct detrimental to the functioning of schools, public, private or parochial. The vagueness label is properly applicable only to a statute or ordinance the terms of which are such that one of common intelligence must be in doubt both as to its meaning and its application.[7] The Supreme Court, in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1956) put the matter in these terms, quoting from the earlier case of United States v. Petrillo, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1541, 1542, 91 L.Ed. 1877 (1946):

"Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. ' * * *

[T]he Constitution does not require impossible standards' ; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *' United States v. Petrillo, 332 U.S. 1, 7–8 [67 S.Ct. 1538]." [Footnote omitted.]

We find neither doubt, particularly, in view of the fact that the allegedly objectionable words do not stand alone. We do not find a bar *simpliciter* on creating a disturbance. Both as to disturbance and diversions we find a qualifying objective, namely, the good order, the quietude, and the peace of a school. In this respect, plaintiffs' citation to us of Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) is inappropriate. As was observed by the Court of Appeals of this circuit in Norton et al. v. Discipline Committee et al., 419 F.2d 195 (1969):
"*Tinker* involved a few high school children who did nothing except wear black arm bands for a few days to publicize their objections to hostilities in Vietnam. These children did not urge a riot, nor were they disrespectful to their teachers."

The specificity of the ordinance is further emphasized by its use of the words "wilfully or maliciously." As Mr. Justice Black, writing for the majority, held in Adderley et al. v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), such words make the ordinance "more understandable and clear," and "narrow the scope of the offense." But plaintiffs seek to distinguish. In this ordinance, they argue, only the acts which disturb the school need be wilful and malicious, not the resulting disturbance of the good order of the school. This parsing we reject. We think that both a literal and a reasonable reading

6. Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

7. Connally v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

of the ordinance demands a wilful disturbance.

In short, what the ordinance means is clear and clearly put. There is no guessing as to its meaning. Nor is there doubt as to its application. It proscribes objectionable conduct with all of the clarity, the precision, and the specificity of which the forbidden conduct is capable. It does not spell out the infinite ways in which the quietude of a place of learning may be disrupted, its students diverted, or its teachers turned from teaching to pacification or combat. It need not. Nor do we overlook the setting in which the ordinance is to be applied. The disturbance of a school differs both in kind and scope from the disturbance of a factory, and the diversion of the thought of children need not be by acts of such magnitude as to divert the attention of a company of marines. Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697; Cameron v. Johnson, *supra*. The ordinance, we find, is not vague. Furthermore, we are constrained to observe that the conduct of the group hereinabove described, the kicking, yelling, and use of force, at a school during school hours with resultant disruption of the educational process is lawless, hard-core conduct that could be prosecuted under any interpretation of the ordinance here involved. *Dombrowsky, supra*, 380 U.S. p. 491, 85 S.Ct. 1116.[8]

But it is argued as well that the statute is overbroad and thus that the ordinance "could easily be used to prohibit conduct which may not constitutionally be prohibited." We are told that harmless, permissible, and peaceful protest may thus be brought within the sweep of an all-inclusive ordinance, citing Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444.

What the defendants overlook in this argument is what has been described as "intertwining." Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487, quoted with approval in Cameron v. Johnson, *supra*, pointed out that "picketing and parading [are] subject to regulation even though intertwined with expression and association." The ordinance before us does not in terms prohibit any kind of gathering or of expression save that which disturbs the quietude of a school. Those interested in this form of expression are free to congregate elsewhere, to propagandize, to meet, to speak, to persuade, and debate —but not in so doing to disturb the schools. In short, and as we have heretofore observed, the ordinance deals with a topic of great and fundamental interest to our society, namely, the schools and their undisturbed operation. Conduct at variance with this objective may be proscribed. As well put in *Cox, supra*, 379 U.S. at 564, 85 S.Ct. at 481 "the fact that free speech is intermingled with such conduct does not bring with it constitutional protection."

■■ Much has been written of the preferred position of the constitutional freedoms under the First Amendment and their sanctity. Such concern is both proper and praiseworthy. But it is apparent that there is an attempted erosion, in the name of the First Amendment, of other freedoms equally dear. This is the case before us. The freedoms of a child to learn in an atmosphere conducive to thought, guidance, and reflection, the freedom of an instructor to teach without fear of disruption of his class or diversion of its attention—these freedoms are subservient to none. The cloak of the First Amendment is not so broad as to cover their destruction, even their disruption. What certain First Amendment protagonists have overlooked in such violent assertions of their constitutional rights as we have before us, is that the asserters themselves have duties and obligations as well as constitutional rights. Under

---

8. It is also, we note, "within the reach of acceptable limiting construction readily to be anticipated as the result of a single criminal prosecution." *Dombrowski, supra*, 380 U.S. pp. 491–492, 85 S.Ct. p. 1123.

our scheme of things, right and duty travel a two-way street. The assertion of a constitutional right does not absolve the asserter from the performance of his own duties and obligations. Nor does it permit him to violate the reasonable and constitutional rights of others.

Such conduct as here described is not permissible "free speech." Such conduct is lawless and criminal. It violates the rights of others. It disrupts the educational process and provokes public violence. Rather than "free speech" it is but the free abuse of others and cannot be tolerated in any ordered society. Those employing such tactics are doing a disservice to the ideals they profess to espouse. Let them accord others in our community their rights to peace, stability, and good order. There are ample opportunities for expression that do not involve public violence and as long as our courts sit such opportunities will remain open and fully protected.

It is our finding that the ordinance in question is neither void for vagueness nor overbroad on its face, or as applied to the conduct of the plaintiffs and their classes. A suitable order may be presented.