639 S.E.2d 144

**In the Interest of AMIR X.S., a juvenile under the age of seventeen, Appellant.**

**No. 26219.**

Supreme Court of South Carolina.

Heard Sept. 20, 2006.

Decided Nov. 6, 2006.

Rehearing Denied Jan. 18, 2007.

Appellate Defender Eleanor Duffy Cleary, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Deborah R.J. Shupe, all of Columbia, and Solicitor Jerry W. Peace, of Greenwood, for Respondent.

Chief Justice TOAL:

This case involves a constitutional attack on a statute defining the offense of disturbing schools. The family court upheld the statute's constitutionality and subsequently adjudicated Appellant delinquent for violating the statute. We affirm in part and vacate in part.

## FACTUAL/PROCEDURAL BACKGROUND

The State filed a juvenile petition in family court in October 2004 alleging that Amir X.S. ("Appellant") violated S.C.Code Ann. § 16–17–420 (2003) by willfully, unlawfully, and unnecessarily interfering with and disturbing the students and teachers at Southside Learning Center in Greenwood County, South Carolina.

Before trial, Appellant moved to quash the juvenile petition claiming that § 16–17–420 was unconstitutionally vague and overbroad in violation of the First Amendment of the United States Constitution. Section 16–17–420 provides in pertinent part:

"It shall be unlawful: (1) For any person wilfully or unnecessarily (a) to interfere with or to disturb in any way or in any place the students or teachers of any school or college in this State, (b) to loiter about such school or college premises or (c) to act in an obnoxious manner thereon . . . ."

S.C.Code Ann. § 16–17–420(1).

At the hearing on Appellant's motion to quash, the State argued Appellant lacked standing to challenge the statute's constitutionality because Appellant's conduct plainly fell under its terms. The family court upheld the constitutionality of the statute and denied Appellant's motion. After hearing testimony from each party, the family court found there was sufficient evidence to adjudicate Appellant delinquent for the violation of § 16–17–420. The family court committed Appellant to ninety days in the custody of the Department of Juvenile Justice and imposed one year of probation.

Appellant filed this appeal pursuant to Rule 203, SCACR [1] and raises the following issues for review:

I. Is § 16–17–420 unconstitutional because it is overly broad and punishes a substantial amount of protected free speech in relation to the statute's plainly legitimate sweep?

---

1. An appeal involving "a challenge on state or federal grounds to the constitutionality of a state law ... where the principal issue is one of the constitutionality of the law" is heard in this Court. Rule 203(d)(1)(A)(ii), SCACR.

II. Does Appellant have standing to challenge § 16–17–420 on grounds of vagueness; and if so, is the statute unconstitutional because it is written in terms so vague that a person of common intelligence must necessarily guess at its meaning?

## LAW/ANALYSIS

## I. Overbreadth

Appellant argues that S.C.Code Ann. § 16–17–420 is unconstitutional because it is overly broad and punishes a substantial amount of protected free speech in relation to the statute's plainly legitimate sweep. We disagree.

The First Amendment overbreadth doctrine is an exception to the usual rules regarding the standards for facial challenges. First, because the very existence of overly broad statutes may have such a deterrent effect on constitutionally protected expression, the traditional rule of standing [2] is relaxed for facial [3] overbreadth claims involving First Amendment rights. *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Under this relaxed rule of standing, the party challenging a statute simply must demonstrate that the statute could cause someone else—anyone else—to refrain from constitutionally protected expression. *Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). In further recognition of the threat to First Amendment freedoms, any enforcement of a statute subject to an overbreadth claim is wholly forbidden until and unless a limiting construction or partial invalidation so narrows it so as to remove the seeming threat to protected expression. *Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908. These exceptions to the traditional rules of practice have been imple-

---

**2.** The traditional rule of standing for facial attacks provides that one to whom application of a statute is constitutional may not attack the statute on grounds that it might be unconstitutional when applied to other people or situations. *United States v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1971).

**3.** A facial challenge in this context is a claim that the law is incapable of any valid application. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

mented out of concern that the threat of enforcement of an overly broad law may deter or "chill" constitutionally protected speech—especially when the overly broad law imposes criminal sanctions. *Virginia v. Hicks,* 539 U.S. 113, 119, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003).

In light of these exceptions to the traditional rules of practice, courts have been "sensitive to the risk that the doctrine itself might sweep so broadly that the exception to ordinary standing requirements would swallow the general rule." *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 799, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). In developing the overbreadth doctrine, the United States Supreme Court has cautioned:

> ... its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct[,] and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.

*Broadrick,* 413 U.S. at 615, 93 S.Ct. 2908.

In an effort to balance these varying interests, courts require that the alleged First Amendment overbreadth must not only be real, but also "substantial" in order to apply the overbreadth exception in a particular case. *Taxpayers for Vincent,* 466 U.S. at 799–800, 104 S.Ct. 2118 (quoting *Broadrick,* 413 U.S. at 615, 93 S.Ct. 2908). Therefore, the doctrine of overbreadth permits a court to wholly invalidate a statute only when the terms are so broad that they punish a substantial amount of protected free speech in relation to the statute's otherwise plainly legitimate sweep—until and unless a limiting construction or partial invalidation narrows it so as to remove the threat or deterrence to constitutionally protected expression. *Hicks,* 539 U.S. at 118–119, 123 S.Ct. 2191.

Turning to the instant case, we first note that although conduct generally is not protected by the First Amendment, *expressive* conduct may be. *U.S. v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). However, we do not find that § 16–17–420 prohibits the kind of clearly expressive conduct historically subject to overbreadth adjudication in

the school context. Notably, in *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), the United States Supreme Court declared unconstitutional a school board's actions suspending students for wearing black armbands to school in protest of the Vietnam War. In *Tinker*, the court held that wearing armbands as a "silent, passive expression of opinion" was protected symbolic speech regardless of the popularity of the opinion being expressed. Restricting this type of speech when it was "unaccompanied by any disorder or disturbance" could not be tolerated under the First Amendment. 393 U.S. at 508, 89 S.Ct. 733. Prior to that, in *Edwards v. South Carolina*, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963), the United States Supreme Court held that breach of the peace convictions for high school and college students peaceably assembling and protesting on public grounds were unconstitutional as violative of the First Amendment.

An analysis of § 16–17–420 is more appropriately derived from cases analyzing statutes targeting conduct termed "disruptive" to schools, with no specific prohibition otherwise on First Amendment expressive conduct. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) is the leading United States Supreme Court decision in that context. In *Grayned*, the petitioner was convicted under an Illinois antinoise ordinance for his part in a demonstration in front of a school. He subsequently challenged the constitutionality of the ordinance which prohibited "any noise or diversion which disturbs or tends to disturb the peace or good order of a school" on grounds of vagueness and overbreadth. 408 U.S. at 108, 92 S.Ct. 2294. Relying on *Tinker* as its touchstone, the court held that although the statute tended to target expressive conduct, such expressive conduct could be restricted in the school environment if the forbidden conduct "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Id.* at 118, 92 S.Ct. 2294 (quoting *Tinker*, 393 U.S. at 513, 89 S.Ct. 733). The court distinguished the demonstration at issue in *Grayned* from the wearing of armbands in *Tinker* primarily on the grounds that the *Tinker* students "neither interrupted school activities nor sought to intrude in the school affairs or the lives of others." *Id.* (quoting *Tinker*, 393 U.S. at 514, 89 S.Ct. 733). It further

noted the limited scope of the ordinance, which it construed to punish only conduct that disrupted normal school activities—a decision necessarily made on a case-by-case basis. *Id.* at 119. The *Grayned* court concluded by saying that the city's "modest restriction on some peaceful picketing represents a considered and specific legislative judgment that some kinds of expressive activity should be restricted at a particular time and place, here in order to protect the schools." *Id.* at 121, 92 S.Ct. 2294. Such a reasonable regulation, it held, was consistent with the First Amendment and therefore the antinoise ordinance was not invalid on its face. *Id.* at 121, 92 S.Ct. 2294.

More analogous to the case before this Court is *McAlpine v. Reese,* 309 F.Supp. 136 (1970), in which the federal district court in Michigan upheld the constitutionality of a Michigan ordinance similar to § 16–17–420 against facial attacks of vagueness and overbreadth. The Michigan ordinance at issue provided:

> No person shall wilfully or maliciously make or assist in making any noise, disturbance, or improper diversion by which the peace, quietude or good order of any public, private, or parochial school is disturbed.

309 F.Supp. at 138 (citing Detroit Muni. Code, § 39–1–57 (1954)). In *McAlpine,* the district court observed that the ordinance did not by its terms "prohibit any kind of gathering or expression save that which disturbs the quietude of a school." *Id.* at 140. The court noted the "fundamental interest to our society . . . [of] the schools and their undisturbed operation" and determined that the only kind of conduct prohibited by the ordinance was not "free speech" but rather "free abuse of others." *Id.* at 141. Ultimately, the court rendered the ordinance unsuitable for overbreadth invalidation by concluding that the type of conduct prohibited could "not be tolerated in any ordered society." *Id.* The fact that free speech was intermingled with such conduct did not automatically call for constitutional protection. *Id.* (quoting *Cox v. Louisiana,* 379 U.S. 559, 564, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965)). At the same time, the *McAlpine* court, like the *Grayned* court, was careful in its opinion to distinguish the scope of the Michigan ordinance from other prohibitions on expression that did *not* involve the disruption of schools,

reiterating that the latter would be subject to constitutional protection. *Id.*

Similarly, in *S.H.B. v. State of Florida*, 355 So.2d 1176 (Fla.1977), the Florida Supreme Court upheld the constitutionality of a statute prohibiting the willful interruption or disturbance of "any school." Fla. Stat. § 871.01 (1973). The plaintiff, convicted under the statute for behavior that included "running through the halls of a school in session, disobeying the lawful and reasonable requests of school officials, and repeated loud utterances," claimed the statute was overly broad on its face. *S.H.B.*, 355 So.2d at 1179. He asserted that an overbreadth analysis of the statute should be governed by cases defining the constitutional limits of breach of the peace statutes. The Florida court disagreed and held that the statute at issue only prohibited disturbances of lawful assembly (i.e. school gatherings) and therefore was limited in its application in a way that breach of the peace statutes were not. *Id.* at 1178. The court recognized that school gatherings are "fragile by their nature," *id.*, and comparing the school environment to a general public forum, the court noted that in schools, "a single individual may cause havoc in a situation in which hundreds of others have sought a common purpose." *Id.* The court emphasized that certain conduct—even if "expressive"—could disrupt the school environment even where it might not elsewhere. *Id.* The Florida court, like the *Grayned* court, condoned a case-by-case approach to weeding out overly broad applications of the statute and held that the statute was constitutional on its face. *Id.*

 Applying these principles to South Carolina's disturbing schools statute, S.C.Code Ann. § 16–17–420(1), we find that it does not substantially prohibit First Amendment speech. By its terms, the statute does not apply to protected speech. Specifically, the disturbing schools statute does not prohibit spoken words or conduct "akin to 'pure speech.'" *Tinker*, 393 U.S. at 508, 89 S.Ct. 733. Nor does the statute broadly regulate conduct like a breach of the peace statute.[4]

---

4. Breach of the peace statutes are generally attacked on grounds of overbreadth and vagueness because if not drafted with proper specificity, they have a strong potential for infringement on First Amendment rights in otherwise peaceable assembly. *See Coates v. Cincinnati*, 402

*Broadrick*, 413 U.S. at 616, 93 S.Ct. 2908. Instead, § 16–17–420 criminalizes conduct that "disturbs" or "interferes" with schools, or is "obnoxious." S.C.Code Ann. § 16–17–420(1)(a) and (c). In applying the *Tinker* distinction between direct restrictions on silent, passive expression of opinion versus restrictions on expression when accompanied by disorder or disturbance of schools, § 16–17–420, like the regulations at issue in *McAlpine* and *S.H.B.*, clearly applies to the latter. Such conduct is not protected by the First Amendment and accordingly, we hold that § 16–17–420 is not a substantial threat to protected speech requiring overbreadth adjudication.

The overbreadth doctrine additionally provides that any threat or deterrence to constitutionally protected expression may be removed by a limiting construction on the challenged statute. *Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908. Analyzed from this perspective, § 16–17–420 is limited in its application by its own terms so as to remove any substantial threat to constitutionally protected expression. First, the statute specifically deals with the disturbance of students and teachers in South Carolina's schools, and not a disturbance in just any public forum. *See S.H.B.*, 355 So.2d at 1178. Furthermore, it does not explicitly prohibit any type of gathering or expression except those which disturb the learning environment in South Carolina's schools. Those who wish to engage in this type of "expression" are free to either do so elsewhere; or do so in the school environment in a way that does not disturb schools. *McAlpine*, 309 F.Supp. at 140. Finally, the statute is limited in the type of conduct that may be punished. The disturbance or interference is required to be done "wilfully" or "unnecessarily." S.C.Code Ann. § 16–17–420(1)(a).

Taken to its outermost First Amendment boundaries, § 16–17–420 is most accurately characterized as "intertwining" speech and non-speech elements. *Cox v. Louisiana*, 379 U.S. at 563, 85 S.Ct. 476; *McAlpine*, 309 F.Supp. at 140. Appellant

U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Cox*, 379 U.S. 559, 85 S.Ct. 476; *Edwards*, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697. However, *Grayned* and its progeny clearly indicate that the constitutionality of statutes that specifically address a "breach of the peace" *in schools* are to be considered in light of the "special characteristics of the school environment." 408 U.S. at 116, 92 S.Ct. 2294 (quoting *Tinker*, 393 U.S. at 506, 89 S.Ct. 733).

argues that this might include constitutionally protected expression, but we find this is not "substantially" so. The proper functioning of schools is "a topic of great and fundamental interest to our society." *McAlpine* 309 F.Supp. at 140. Clearly the State has a legitimate interest in maintaining the integrity of its education system.[5] This objective is necessarily achieved in part by classroom discipline. Because the school environment is "fragile by [its] nature," it requires a certain level of conduct and cooperation on the part of both the student and the teacher in order to function effectively for all its participants. *S.H.B.*, 355 So.2d at 1178. Any conduct in this context that interferes with the State's legitimate objectives may be prohibited. "The fact that free speech is intermingled with such conduct does not bring with it constitutional protection." *McAlpine,* 309 F.Supp. at 140.

Appellant urges this Court to consider a school debate scenario where an individual could be prosecuted under § 16–17–420 for expressing a "disturbing" view, which in turn might implicate other students who openly disagree with that view in a manner deemed "obnoxious." S.C.Code Ann. § 16–17–420(1). The innocent scenario suggested by Appellant is clearly not within the scope of § 16–17–420, nor would this Court construe it that way. *Tinker* permits the State to enforce its significant interest in its education system by punishing behavior that "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." 393 U.S. at 506, 89 S.Ct. 733. Section 16–17–420 prohibits no more than this. Moreover, the United States Supreme Court has mandated a case-by-case approach to address whatever overbreadth may exist. *See Grayned,* 408 U.S. at 119–120, 92 S.Ct. 2294; *Broadrick,* 413 U.S. at 615, 93 S.Ct. 2908. *See also S.H.B.,* 355 So.2d at 1178. A case-by-case approach to the enforcement of the statute allows this Court to act accordingly in the unlikely event that a person genuinely exercising his constitutional right to expression—

---

5. The General Assembly originally enacted § 16–17–420(1) in 1919 as a statute to protect schools for "women and girls." 1919 S.C. Acts 239. The statute was amended in 1968 to apply to "any" school. 1968 S.C. Acts 2308. Today § 16–17–420 is part of Title 16, Chapter 17 of the South Carolina Code which is appropriately titled "Offenses Against Public Policy."

such as the debate team member envisioned by Appellant—becomes a target of § 16–17–420. *See S.H.B.,* 355 So.2d at 1178; *McAlpine,* 309 F.Supp. at 141.

Any fertile legal imagination can dream up conceivable ways in which enforcement of a statute violates First Amendment rights. · *Grayned,* 408 U.S. at 111, n. 15, 92 S.Ct. 2294. However, conceivable overbreadth must be substantial in order to merit overbreadth adjudication. Notwithstanding all other laws of this state, Appellant and others are welcome to express themselves in a way that "disturbs" others in any other public forum without offending § 16–17–420. Because of the state's fundamental interest in protecting its schools, § 16–17–420 draws the line on conduct that materially disturbs *normal school activity*—the very same constitutional line drawn by *Tinker* and its progeny. We therefore hold that § 16–17–420 does not punish a substantial amount of protected speech, and accordingly, does not warrant overbreadth adjudication.

## II. Vagueness

Respondent contends that Appellant lacks standing to make a facial vagueness challenge to the constitutionality of § 16–17–420. We agree.

■■ The traditional rule of standing for facial attacks on statutes, *supra* n. 3, applies to facial vagueness challenges such as the one before this Court. "The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication." *State v. Michau,* 355 S.C. 73, 76, 583 S.E.2d 756, 758 (2003) (quoting *Curtis v. State,* 345 S.C. 557, 571, 549 S.E.2d 591, 598 (2001)). The constitutional standard for vagueness is whether the law gives fair notice to those persons to whom the law applies. Therefore, "one to whose conduct the law clearly applies does not have standing to challenge it for vagueness" as applied to the conduct of others. *Village of Hoffman Estates,* 455 U.S. at 495, 102 S.Ct. 1186; *Michau,* 355 S.C. at 77, 583 S.E.2d at 758.

■ There can be no doubt that Appellant's conduct falls within the most narrow application of § 16–17–420. Appellant's teacher testified to the family court that for a period of

over two hours, Appellant behaved in a way that was wilfully disruptive and unnecessary. Appellant paced about the classroom and refused to remain in his desk; cursed to his teacher and other students; and harassed one student with comments about the student's mother. For over two hours, Appellant's teacher patiently attempted to reason with him regarding his classroom behavior, to no avail. Left with no other choice but to remove Appellant from the classroom so that she and the other students could focus on their educational objectives, the teacher asked another staff member to escort Appellant from the room. Appellant, however, did not stop there. Appellant began yelling and cursing, swung a punch at his teacher as he left the classroom, and continued his tirade as he was escorted down the hall.

Moreover, Appellant had prior notice that this type of conduct was prohibited. A juvenile petition from May 2004 charged Appellant for a violation of the very same statute he now alleges is unconstitutionally vague pursuant to an October 2004 juvenile petition. Accordingly, Appellant does not have standing to facially challenge § 16–17–420 on grounds of vagueness.

Because Appellant does not have standing to challenge § 16–17–420 on grounds of vagueness, we do not address the merits of his argument that the terms of § 16–17–420 are so vague that a person of common intelligence must necessarily guess at its meaning. *See Broadrick*, 413 U.S. at 607, 93 S.Ct. 2908 (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). The family court's ruling that § 16–17–420 is not unconstitutionally vague is vacated.

### CONCLUSION

For the foregoing reasons, we affirm the family court's decision that § 16–17–420 is not unconstitutionally overbroad. Because Appellant does not have standing to challenge § 16–17–420 for vagueness, the family court's decision on that matter is vacated.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.