**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1367**

NIYA KENNY, on behalf of herself and all others similarly situated; TAUREAN NESMITH, on behalf of himself and all others similarly situated; GIRLS ROCK CHARLESTON INC, on behalf of themselves and all others similarly situated; D.S., by and through her next of kin Juanita Ford, on behalf of herself and all others similarly situated; S.P., by and through her next of kin Melissa Downs, on behalf of herself and all others similarly situated,

Plaintiffs − Appellants,

v.

ALAN WILSON, in his official capacity as Attorney General of South Carolina, on behalf of himself and others similarly situated; J. ALTON CANNON, JR., in his official capacity as the Sheriff of Charleston County, SC; on behalf of himself and others similarly situated; GREGORY G. MULLEN, in his official capacity as the Chief of the Police Department of the City of Charleston, SC; on behalf of himself and others similarly situated; EDDIE DRIGGERS, JR., in his official capacity as the Chief of the Police Department of the City of North Charleston, SC; on behalf of himself and others similarly situated; CARL RITCHIE, in his official capacity as the Chief of the Police Department of the City of Mt. Pleasant, SC; on behalf of himself and others similarly situated; LEON LOTT, in his official capacity as the Sheriff of Richland County, SC; on behalf of himself and others similarly situated; W.H. HOLBROOK, in his official capacity as the Chief of the Police Department of the City of Columbia, SC; on behalf of himself and others similarly situated; STEVE LOFTIS, in his official capacity as the Sheriff of Greenville County, SC; on behalf of himself and others similarly situated; KEN MILLER, in his official capacity as the Chief of the Police Department of the City of Greenville, SC; on behalf of himself and others similarly situated; LANCE CROWE, in his official capacity as the Chief of the Police Department of the City of Travelers Rest, SC; on behalf of himself and others similarly situated; MICHAEL D. HANSHAW, in his official capacity as Interim Chief of the Police Department of the City of Simpsonville, SC; on behalf of himself and others similarly situated; M. BRYAN TURNER, in his official capacity as the Chief of the Police Department of the City of Mauldin, SC; on behalf of himself and others similarly situated; DAN REYNOLDS, in his official capacity as

the Chief of the Police Department of the City of Greer, SC; on behalf of himself and others similarly situated; A. KEITH MORTON, in his official capacity as the Chief of the Police Department of the City of Fountain Inn, SC; on behalf of himself and others similarly situated,

Defendants – Appellees.

Appeal from the United States District Court for the District of South Carolina, at Charleston. C. Weston Houck, Senior District Judge. (2:16-cv-02794-CWH)

Argued: December 6, 2017                    Decided: March 15, 2018

Before DUNCAN and DIAZ, Circuit Judges, and Paula XINIS, United States District Judge for the District of Maryland, sitting by designation.

Vacated and remanded by published opinion. Judge Diaz wrote the opinion, in which Judge Duncan and Judge Xinis joined.

**ARGUED:** Sarah Hinger, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, INC., New York, New York, for Appellants. James Emory Smith, Jr., OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina for Appellees Alan Wilson, M. Bryan Turner, and A. Keith Morton; Sandra J. Senn, SENN LEGAL, LLC, Charleston, South Carolina, for Appellees J. Alton Cannon, Jr., Gregory G. Mullen, and Eddie Driggers, Jr. **ON BRIEF:** Dennis D. Parker, Lenora M. Lapidus, Galen L. Sherwin, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, INC., New York, New York; Susan K. Dunn, AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTH CAROLINA, Charleston, South Carolina, for Appellants. Alan Wilson, Attorney General, Robert D. Cook, Solicitor General, Columbia, South Carolina, for Appellees Alan Wilson, M. Bryan Turner, Lance Crowe, A. Keith Morton and Michael D. Hanshaw. W. Michael Hemlepp, Jr., CITY OF COLUMBIA ATTORNEY'S OFFICE, Columbia, South Carolina, for Appellee W.H. Holbrook. Anne R. Culbreath, WILLSON JONES CARTER AND BAXLEY, Greenville, South Carolina, for Appellee Steve Loftis. Michael S. Pitts, Logan M. Wells, CITY OF GREENVILLE, OFFICE OF THE CITY ATTORNEY, Greenville, South Carolina, for Appellee Ken Miller. Andrew F. Lindemann, DAVIDSON AND LINDEMANN PA, Columbia, South Carolina, for Appellee Carl Ritchie. Robert D. Garfield, Steven R. Spreeuwers, DAVIDSON and LINDEMANN PA, Columbia, South Carolina, for Appellee Leon Lott.

DIAZ, Circuit Judge:

In this case, a group of former and current South Carolina students and a nonprofit organization filed suit under 42 U.S.C. § 1983 challenging S.C. Code Ann. § 16-17-420 (the "Disturbing Schools Law") and S.C. Code Ann. § 16-17-530 (the "Disorderly Conduct Law") as unconstitutionally vague. The district court dismissed the complaint for lack of standing. It reasoned that plaintiffs' fear of future arrest and prosecution under the two statutes does not rise above speculation and thus does not constitute an injury in fact.

But at least some of the named plaintiffs do not rely on conjecture or speculation, but rather, on the fact that they attend school where they were previously arrested and criminally charged under the two South Carolina statutes, and they don't know which of their actions at school will be interpreted to violate the statutes in the future. Further, plaintiffs allege that the two laws chill their exercise of free expression, forcing them to refrain from exercising their constitutional rights or to do so at the risk of arrest and prosecution. In our view, that is sufficient to plead both a future and ongoing injury in fact. We therefore vacate the district court's judgment and remand for further proceedings.

I.

Before turning to the merits, we set out the relevant statutes. We then describe the plaintiffs involved, the allegations of the complaint, and the basis for the district court's decision.

A.

The Disturbing Schools Law, which all plaintiffs challenge, states:

3

(A) It shall be unlawful:

> (1) for any person willfully or unnecessarily (a) to interfere with or to disturb in any way or in any place the students or teachers of any school or college in this State, (b) to loiter about such school or college premises or (c) to act in an obnoxious manner thereon; or

> (2) for any person to (a) enter upon any such school or college premises or (b) loiter around the premises, except on business, without the permission of the principal or president in charge.

S.C. Code Ann. § 16-17-420(A).[1]

The Disorderly Conduct Law, which two plaintiffs (D.S. and S.P.) challenge on behalf of a class of elementary and secondary public school students, states:

> Any person who shall (a) be found on any highway or at any public place or public gathering in a grossly intoxicated condition or otherwise conducting himself in a disorderly or boisterous manner, (b) use obscene or profane language on any highway or at any public place or gathering or in hearing distance of any schoolhouse or church . . . shall be deemed guilty of a misdemeanor and upon conviction shall be fined not more than one hundred dollars or be imprisoned for not more than thirty days.

S.C. Code Ann. § 16-17-530.

### B.

Plaintiffs include four individuals and one organization—minors D.S. and S.P., Niya Kenny, Taurean Nesmith, and Girls Rock Charleston. D.S. and S.P. represent the proposed class of elementary and secondary public school students in South Carolina. Girls Rock is suing on behalf of its members and itself.

---

[1] The offense is a misdemeanor punishable by up to ninety days in jail or a fine of up to $1,000. S.C. Code Ann. § 16-17-420(B).

4

D.S. and S.P are high school students. D.S. (who is black and has learning disabilities) was charged with violating the Disturbing Schools Law "after becoming involved in a physical altercation which she did not initiate and in which she was the only person who sustained an injury, a lump on her head." Compl. ¶ 101. S.P. (who is white and suffers from mood and conduct disabilities) was charged with violating the Disorderly Conduct Law after she cursed at a student who had been teasing her and refused to leave the library with the principal as instructed.

Kenny and Nesmith are young adults who were previously arrested and charged with violating the Disturbing Schools Law when they expressed concerns about police conduct. When Kenny (who is black) was in high school, she saw a school resource officer pull a female student from her desk, drag her on the floor, and handcuff her. Kenny "attempted to document the incident and called out for someone to do something to stop the violent treatment of her classmate." Compl. ¶ 84. In response, Kenny was arrested and charged with violating the Disturbing Schools Law. The experience left Kenny scared and humiliated, and she withdrew from high school. She later obtained her G.E.D.

Nesmith (who is also black) attends Benedict College. He alleges that a campus police officer arrested him on suspicion of violating both statutes after he complained that the officer was engaged in racial profiling and questioned the officer's request that he produce identification.

Girls Rock is a nonprofit organization that "provides mentorship, music and arts education, and leadership development to young people in Charleston, South Carolina." Compl. ¶ 22. Girls Rock "operates an afterschool program serving at-risk youth" and is

5

"guided by core principles that include challenging criminalization." Compl. ¶ 22. The complaint describes two members of Girls Rock—K.B. and D.D.

K.B. is Latina and was charged with violating the Disturbing Schools Law at age thirteen after she arrived late to gym class and loudly protested when she was asked to leave and go to the "tardy sweep" room. Compl. ¶ 94. K.B. was sentenced to probation and referred to Girls Rock. When K.B. returned to school, she was placed in a program called "Twilight," through which "she was provided no more than three hours of computer-based education per day." Compl. ¶ 95. The Twilight program "did not provide access to the courses necessary to obtain a high school diploma." Compl. ¶ 95.

D.D. is black and was charged with violating the Disturbing Schools Law at her Charleston middle school after she was sent out of class for talking and then proceeded to speak with another student in the hallway. She too was placed on probation and ordered to participate in the Twilight program.

C.

The plaintiffs' complaint outlines two § 1983 claims. First, all plaintiffs challenge the Disturbing Schools Law as unconstitutionally vague on its face and, second, D.S. and S.P. also challenge the Disorderly Conduct Law as unconstitutionally vague as applied to elementary and secondary public school students in South Carolina. Both claims allege (in sum and substance) that the statutes violate plaintiffs' right to due process under the Fourteenth Amendment because they fail to provide sufficient notice of prohibited conduct and encourage arbitrary and discriminatory enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

6

Plaintiffs claim that both statutes criminalize behavior that is indistinguishable from typical juvenile behavior, which schools address on a daily basis without resorting to the criminal justice system. For example, students, including some as young as seven, have been charged under the statutes for cursing, refusing to follow directions, or getting in a physical altercation that doesn't result in any injuries. The complaint further alleges that some students are arrested and charged simply for expressing concerns about police conduct.

According to plaintiffs, criminal charges under the two statutes are among the leading reasons young people enter the juvenile justice system in South Carolina. Between 2010 and 2016, over 9,500 young people throughout the state were referred to the Department of Juvenile Justice under the Disturbing Schools Law, a statistic that excludes those students seventeen and older who are charged and prosecuted as adults.

Plaintiffs also allege that students arrested for violating the statutes are less likely to graduate and more likely to feel stigmatized and afraid, making it difficult to engage in the classroom. When a student's behavior is characterized as "criminal," the school is likely to impose a harsher punishment, diminishing the student's educational opportunities through expulsion, suspension, or placement in alternative settings that do not offer coursework necessary to graduate.

Plaintiffs claim that the statutes are enforced in a discriminatory manner, leaving racial minorities and students with disabilities especially vulnerable. In 2014-2015 black students in South Carolina were nearly four times as likely to be charged under the Disturbing Schools Law compared to their white classmates. In Charleston County, a

7

charge under the Disturbing Schools Law was the number one reason young people entered the juvenile justice system and black students were more than six times as likely to be charged for the offense compared to white students. Plaintiffs allege that such racial disparities in discipline cannot be explained by differences in behavior among students of different races.

The individual plaintiffs and members of Girls Rock—all of whom have previously been charged under one of the two statutes—fear future arrest if, while on or around the grounds of a school, their actions are interpreted to fall under any of the broad terms of the statutes. Additionally, Girls Rock alleges that, as an organization, it is "substantially burdened in its mission by the continued practice of charging students" under the Disturbing Schools Law. Compl. ¶ 23. Girls Rock volunteers attend hearings with its members and present testimony on their behalf. These hearings divert time and resources away from "developing programming and providing direct services to young people and attending to administrative business necessary to sustain the operations of the organization, such as writing grant proposals and conducting fundraising activities." Compl. ¶ 105.

Plaintiffs seek: (1) a declaratory judgment that the statutes violate their right to due process under the Fourteenth Amendment; (2) a preliminary and permanent injunction enjoining defendants from enforcing the laws; and (3) an order enjoining defendants from considering or retaining any of plaintiffs' records relating to the Disturbing Schools or Disorderly Conduct charges filed against them, except as would be permissible following expungement under S.C. Code Ann. § 17-1-40.

D.

8

The district court dismissed plaintiffs' claims for lack of standing. Specifically, the district court held that D.S., S.P., Kenny, Nesmith, and Girls Rock all lacked standing because allegations of a fear or risk of future arrest do not show "imminent harm, an intention to engage in conduct proscribed by the challenged laws, or a credible threat of prosecution." J.A. 542. The court held that the plaintiffs failed to "plead a likelihood of future injury that is certainly impending and not merely possible." J.A. 543. The court also held that Girls Rock lacked organizational standing because it did not face imminent harm and its interests were outside the "zone of interests" protected by the Due Process Clause. J.A. 545–47. This appeal followed.

## II.

We review de novo a district court's dismissal of a case for lack of standing. *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013). At least one plaintiff must demonstrate standing for each claim and form of requested relief. *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). Thus, we must determine whether plaintiffs have standing to bring their two claims and to request (1) a declaratory judgment and (2) a preliminary and permanent injunction enjoining defendants from enforcing the laws.[2] We

---

[2] We do not consider standing issues with respect to the third form of requested relief—to enjoin defendants from considering or retaining plaintiffs' criminal records—because the district court did not specifically address the issue. This is the only form of relief in which *each* plaintiff would need to establish standing because one plaintiff does not have standing to request that another plaintiff's records be expunged. *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 216 (4th Cir. 2017) (holding each plaintiff must allege injury in fact when plaintiffs seek individualized, instead of identical, relief). But

9

accept the facts of the complaint as true as we would in context of a Rule 12(b)(6) challenge because defendants' motions to dismiss are facial challenges to standing that do not dispute the jurisdictional facts alleged in the complaint. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct . . . and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The district court here concluded that plaintiffs' complaint failed to allege an injury in fact.

The injury-in-fact requirement ensures that plaintiffs have a "personal stake in the outcome of the controversy." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548. "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (internal quotation marks omitted). But because plaintiffs here seek declaratory and injunctive relief, they must establish an ongoing or future injury in fact. *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.").

---

because we are at the motion to dismiss stage, we see no need to dismiss this request for relief when the underlying jurisdictional facts have not been fully developed.

10

There are two ways that plaintiffs' allegations of a fear and risk of future arrest can satisfy the injury-in-fact requirement for prospective relief. First, there is a sufficiently imminent injury in fact if plaintiffs allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt v. Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). "[I]t is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Separately, there is an ongoing injury in fact if plaintiffs make a "sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising his right to free expression." *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013) (internal quotation marks omitted).

As we explain, we are satisfied that plaintiffs' allegations satisfy both tests.

A.

Consistent with the *Babbitt* standard for alleging injury, plaintiffs S.P., D.S., and Nesmith say that they are students who fear that their actions will be interpreted to come within the broad terms of the statutes. They attend school without knowing which of their actions could lead to a criminal conviction, which deprives them of notice of prohibited conduct and "may authorize and even encourage arbitrary and discriminatory enforcement" in violation of their right to due process. *See City of Chicago v. Morales*, 527 U.S. 41, 56 (1999); *see also Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 n.4 (2d Cir. 2015) (recognizing plaintiffs' intended conduct—selling and carrying a variety of folding knives—was affected with a constitutional due process interest in notice of prohibited

11

conduct, but proscribed by statute, because plaintiffs couldn't determine which knives were prohibited under a New York law). Additionally, attending school inevitably involves expressive conduct and these three plaintiffs allege that the statutes restrict their ability "to engage with school," "speak out against abuses," or "participate in conversations about policing," and therefore limit their right to free speech under the First Amendment. Compl. ¶¶ 9, 2, 80–90.

Turning to the second part of the *Babbitt* standard, there is a credible threat of future enforcement so long as the threat is not "imaginary or wholly speculative," *Babbitt*, 442 U.S. at 302, "chimerical," *Steffel*, 415 U.S. at 459, or "wholly conjectural," *Golden v. Zwickler*, 394 U.S. 103, 109 (1969). "[P]ast enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical." *Driehaus*, 134 S. Ct. at 2345 (internal quotation marks omitted). Threat of prosecution is especially credible when defendants have not "disavowed enforcement" if plaintiffs engage in similar conduct in the future. *Id.* Furthermore, there is a presumption that a "non-moribund statute that facially restricts expressive activity by the class to which the plaintiff belongs presents such a credible threat." *North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999) (internal quotation marks omitted). "This presumption is particularly appropriate when the presence of a statute tends to chill the exercise of First Amendment rights." *Id.*

We find that S.P. and D.S. face a credible threat of future arrest or prosecution under the Disturbing Schools Law and Disorderly Conduct Law, and that Nesmith faces a credible threat of arrest or prosecution under the Disturbing Schools Law because these three plaintiffs regularly attend schools where they allege there may be future encounters

12

with school resource officers or other law enforcement; they have been prosecuted under the laws in the past; and the defendants have not disavowed enforcement if plaintiffs engage in similar conduct in the future. Further, plaintiffs allege that black students and students with disabilities are more likely to be criminally charged with violating the statutes. S.P is disabled, Nesmith is black, and D.S. is both disabled and black. Thus, the threat of enforcement is particularly credible with respect to these three plaintiffs.

Moreover, the presumption of a credible threat applies. Plaintiffs plausibly allege that the two statutes are regularly enforced against students like S.P., D.S., and Nesmith; they restrict students' expressive activity, including anything perceived as "disturbing," "obnoxious," "disorderly," or "boisterous"; and they tend to chill students' engagement in the classroom as well as their ability to speak out against police and participate in conversations about policing. As a result, we may presume that, as students in South Carolina, S.P., D.S., and Nesmith face a credible threat of prosecution.[3]

---

[3] The injury-in-fact element is also "commonly satisfied by a sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising his right to free expression." *Cooksey*, 721 F.3d at 235. Although "[s]ubjective or speculative accounts of such a chilling effect are not sufficient . . . a claimant need not show he ceased those activities altogether to demonstrate an injury in fact." *Id.* at 236 (quoting *Benham v. City of Charlotte*, 635 F.3d 129, 135 (4th Cir. 2011)). Instead, "[g]overnment action will be sufficiently chilling when it is likely to deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* (same).

Here, D.S., S.P., and Nesmith plausibly allege that the statutes have a chilling effect on their free expression. Specifically, they contend that it's more difficult for students who fear arrest "to engage with school" and that the statutes chill "the ability of students to speak out against abuses and to participate in conversations about policing." Compl. ¶¶ 2, 9. We think that sufficient to allege an injury in fact.

13

B.

The district court concluded that there was no credible threat of prosecution because plaintiffs' future injuries are just as speculative and hypothetical as the alleged future injury in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). We disagree.

In *Lyons*, the plaintiff sought to enjoin the Los Angeles Police Department's use of chokeholds when an officer faces no threat of deadly force. 461 U.S. at 98. The plaintiff had previously been handcuffed and choked by a police officer during the course of a traffic stop, but the court held that "[a]bsent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles." *Id.* at 111.

However, *Lyons* did not involve a pre-enforcement challenge to a statute or any allegation of a chilling effect on the plaintiff's exercise of his First Amendment rights. The plaintiff there was seeking injunctive relief based on the conduct of a single police officer during a single traffic stop. In fact, the Court in *Lyons* explained that there would have been an actual controversy if Lyons had "allege[d] that he would have another encounter with the police" and "that the City ordered or authorized police officers to act in such manner." 461 U.S. at 105–06.

That is precisely what plaintiffs allege here—specifically, that there will be future encounters with officers at school and that the statutes in question authorize defendants to violate their rights to due process and free speech. Relatedly, unlike Lyons, D.S., S.P., and Nesmith allege they will be subject to arrest or prosecution for engaging in activity

14

protected by the Constitution. *See Hernandez v. Cremer*, 913 F.2d 230, 234 (5th Cir. 1990) ("Hernandez (unlike Lyons) was engaged in an activity protected by the Constitution.").

The defendants say that the plaintiffs cannot satisfy the *Babbitt* test because the South Carolina courts have provided limiting constructions that clarify the reach of the statutes. *See City of Landrum v. Sarratt*, 572 S.E.2d 476 (S.C. Ct. App. 2002) (interpreting the Disorderly Conduct Law); *In re Amir X.S.*, 639 S.E.2d 144 (S.C. 2006) (interpreting the Disturbing Schools Law). Again, we do not agree.

*Sarratt* was an appeal from a criminal conviction. 572 S.E.2d at 477. The question was whether Sarratt, who had yelled profanities at his mother in a municipal parking lot, had violated the Disorderly Conduct Law. *Id.* The South Carolina Court of Appeals accepted the lower court's determination that profane language alone can't constitute a violation of the Disorderly Conduct Law in light of the First Amendment and "must be accompanied by fighting words or other behavior such as gross intoxication." *Id.* The court then found that Sarratt had used fighting words because he yelled loudly and directed vulgarities at his mother, and it therefore upheld his conviction.

*Sarratt* clarifies that profane language alone cannot constitute a violation of the law, but it says nothing at all about how to interpret other vague phrases in the Disorderly Conduct Law like "conducting [oneself] in a disorderly or boisterous manner" or even what conduct must accompany profane language for there to be a criminal conviction. Thus, it remains plausible that the Disorderly Conduct Law is vague, particularly as applied to elementary and secondary students (who are in many ways disorderly or boisterous by nature).

*In re Amir* is also not dispositive as to whether the Disturbing Schools Law, as interpreted by the state court, infringes on plaintiffs' rights to due process and free expression. There, the plaintiff challenged the Disturbing Schools Law as unconstitutionally vague and overbroad in violation of the First Amendment. *In re Amir*, 639 S.E.2d at 145. The Supreme Court of South Carolina did not reach the merits of the vagueness challenge, holding instead that the statute was not overly broad because it draws "the very same constitutional line drawn by *Tinker* and its progeny." *Id.* at 150.

*Tinker* held that a school district could not punish students for wearing black armbands to school in protest of the Vietnam War because there was no "material interference" with school activities. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 514 (1969). The *Tinker* Court explained that "conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior— materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech." *Id.* at 513.

As for *Tinker's* progeny, the primary case discussed in *In re Amir* (*Grayned v. City of Rockford*) involved a city ordinance prohibiting a person, while on grounds adjacent to a building in which a school is in session, from willfully making a noise or diversion that disturbs the peace or good order of the school session. 408 U.S. 104, 107–08 (1972). The Court there held the ordinance was a reasonable time, place, manner regulation and thus not overbroad. *Id.* at 116–17. It also held that "[a]lthough the question is close," the ordinance was not impermissibly vague because it forbid "willful activity at fixed times—

16

when school is in session—and at a sufficiently fixed place—'adjacent' to the school." *Id.* at 109–11.

Unlike the school regulation in *Tinker* or the city ordinance in *Grayned*, the Disturbing Schools Law is a criminal law that applies to all people who in "any way or in any place" willfully or unnecessarily disturb students or teachers of any school or college. S.C. Code Ann. § 16-17-420(A)(1). We note also that both *In re Amir* and *Tinker* are cases addressing overbreadth challenges; neither consider the separate question of whether a statute's prohibitions are unconstitutionally vague and allow for arbitrary or discriminatory enforcement. In short, we do not think these cases foreclose the plaintiffs' claims here.

Finally, defendants say that plaintiffs fail to allege an intent to engage in a specific course of conduct proscribed by the statutes. But it is precisely because the statutes are so vague that plaintiffs can't be more specific. Plaintiffs allege that they can be criminally prosecuted for just about any minor perceived infraction and that they can't predict the type of conduct that will lead to an arrest.

In any event, plaintiffs don't need to allege a specific intent to violate the statutes for purposes of standing. In *Babbitt*, for example, a farmworkers' union and others sought declaratory judgment that Arizona's farm labor statute was unconstitutional, and requested an injunction against its enforcement. 442 U.S. at 289. In particular, the union claimed that the statute's provision limiting union publicity directed at consumers of agricultural products "unconstitutionally penalize[d] inaccuracies inadvertently uttered in the course of consumer appeals." *Id.* at 301.

17

The Court there held that the union's challenge "plainly pose[d] an actual case or controversy" because even though the union did "not plan to propagate untruths" as prohibited by the statute, the union nevertheless contended "that erroneous statement is inevitable in free debate." *Id.* (internal quotation marks omitted). In other words, it was enough that the union alleged an intent to engage in conduct that would inevitably—albeit incidentally—violate the statute. Likewise, plaintiffs here contend that behavior perceived as "obnoxious" or "boisterous" is inevitable on school grounds.

## III.

For the reasons given, we conclude that S.P., D.S., and Nesmith's allegations are sufficient to establish an injury in fact.[4] We therefore vacate the district court's judgment and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

[4] Because S.P., D.S., and Nesmith satisfy the injury-in-fact requirement, we need not decide whether Kenny or Girls Rock have also established an injury in fact. Whether the claims alleged by these plaintiffs survive further analysis is a matter we leave to the district court.