709 S.E.2d 633

**In the Matter of ANONYMOUS MEMBER OF the SOUTH CAROLINA BAR, Respondent.**

**No. 26964.**

Supreme Court of South Carolina.

Heard Sept. 22, 2010.

Decided April 25, 2011.

330

Disciplinary Counsel Lesley M. Coggiola and Deputy Disciplinary Counsel Barbara M. Seymour, both of Columbia, for Office of Disciplinary Counsel.

David Dusty Rhoades, of Charleston, and Cynthia Barrier Patterson, of Columbia, for Respondent.

PER CURIAM.

In this attorney discipline matter, the Hearing Panel (the Panel) determined Respondent was subject to discipline for violating Rule 7(a)(5), RLDE, Rule 413, SCACR, and Rule 8.4(e), RPC, Rule 407, SCACR, both of which provide that a lawyer may be disciplined for engaging in conduct tending to pollute the administration of justice or bring the legal profes-

sion into disrepute, and Rule 7(a)(6), RLDE, Rule 413, SCACR, which provides it is a ground for discipline for an attorney to violate the attorney's oath of office. A majority of the Panel concluded Respondent's action warranted an admonition and would require Respondent to pay the costs of this proceeding, while one member of the Panel recommended Respondent receive a Letter of Caution with a finding of minor misconduct. We find that Respondent did violate the rules outlined above, but we disagree with the majority of the Panel's recommendation. We find Respondent's acknowledgement of misconduct and remorse to be sincere and effective in the mitigation of our sanction. Accordingly, we issue a private Letter of Caution with a finding of minor misconduct to Respondent.

Additionally, for the benefit of the bar, we take this opportunity to address what we see as a growing problem among the bar, namely the manner in which attorneys treat one another in oral and written communication. We are concerned with the increasing complaints of incivility in the bar. We believe United States Supreme Court Justice Sandra Day O'Connor's words elucidate a lawyer's duty: "More civility and greater professionalism can only enhance the pleasure lawyers find in practice, increase the effectiveness of our system of justice, and improve the public's perception of lawyers." Sandra Day O'Connor, *Professionalism*, 76 Wash. U. L.Q. 5, 8 (1998).

## FACTS

The formal charges in this matter arose out of a disciplinary complaint regarding an e-mail message Respondent sent to opposing counsel (Attorney Doe) in a pending domestic matter. Respondent represented the mother and Attorney Doe represented the father in an emotional and heated domestic dispute. It was within this context that Respondent sent Attorney Doe the following e-mail (the "Drug Dealer" e-mail):

I have a client who is a drug dealer on ... Street down town [sic]. He informed me that your daughter, [redacted] was detained for buying cocaine and heroine [sic]. She is, or was, a teenager, right? This happened at night in a known high crime/drug area, where alos [sic] many shootings take place. Lucky for her and the two other teens,

they weren't charged. Does this make you and [redacted] bad parents? This incident is far worse than the allegations your client is making. I just thought it was ironic. You claim that this case is so serious and complicated. There is nothing more complicated and serious than having a child grow up in a high class white family with parents who are highly educated and financially successful and their child turning out buying drugs from a crack head at night on or near ... Street. Think about it. Am I right?

Attorney Doe's spouse, also an attorney, filed the complaint in this matter after Attorney Doe disclosed the "Drug Dealer" e-mail to him. At the hearing, Respondent admitted that Attorney Doe's daughter had no connection to the domestic action.

At the hearing, Respondent asserted that the e-mail was in response to daily obnoxious, condescending, and harassing e-mails, faxes, and hand-delivered letters from Attorney Doe. These communications allegedly commented on the fact that Respondent is not a parent and therefore could not advise Respondent's client appropriately.[1] In support of this contention, Respondent submitted five e-mail exchanges between Respondent and Attorney Doe, four of which were dated after the "Drug Dealer" e-mail. In further support of Respondent's assertions, Respondent claimed to possess ten banker's boxes full of e-mails and other documents that constituted daily bullying from Attorney Doe; however, these documents were not produced. Due to a lack of evidence supporting Respondent's assertions, the Panel found Respondent's testimony to be entirely lacking in credibility. Ultimately, the Panel found Respondent was subject to discipline for sending the "Drug Dealer" e-mail to Attorney Doe.

## STANDARD OF REVIEW

 "This Court has the sole authority to discipline attorneys and to decide the appropriate sanction after a thorough review of the record." *In re Thompson,* 343 S.C. 1, 10, 539 S.E.2d 396, 401 (2000) (citations omitted). "Although this Court is not bound by the findings of the Panel and Commit-

---

1. A complaint filed by Respondent against Attorney Doe was concluded in a confidential manner.

tee, these findings are entitled to great weight, particularly when the inferences to be drawn from the testimony depend on the credibility of the witnesses." *In re Marshall,* 331 S.C. 514, 519, 498 S.E.2d 869, 871 (1998) (citation omitted). "However, this Court may make its own findings of fact and conclusions of law." *Id.* (citation omitted).

## LAW

### I. Conduct Prejudicial to the Administration of Justice

"It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice." Rule 8.4(e), RPC, Rule 407, SCACR. Additionally, a lawyer is subject to discipline for "engag[ing] in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute...." Rule 7(a)(5), RLDE, Rule 413, SCACR. This Court has stated that a lawyer "must act in a dignified and professional manner, with proper respect for the parties, witnesses, opposing counsel, and for the Court. When a lawyer fails to conduct himself appropriately, he brings into question the integrity of the judicial system, and, as well, disserves his client." *In re Goude,* 296 S.C. 510, 512, 374 S.E.2d 496, 497 (1988).

■ We agree with the Panel that Respondent's e-mail was conduct tending to bring the legal profession into disrepute and was prejudicial to the administration of justice. By sending the "Drug Dealer" e-mail to Attorney Doe, Respondent was doing a disservice to Respondent's client. An e-mail such as the one sent by Respondent can only inflame the passions of everyone involved, make litigation more intense, and undermine a lawyer's ability to objectively represent his or her client. This kind of personal attack against a family member of opposing counsel with no connection to the litigation brings into question the integrity of the judicial system and prejudices the administration of justice.

### II. Violation of the Lawyer's Oath

Respondent contends that the civility clause contained within the lawyer's oath is unconstitutionally vague and overbroad. We disagree.

Respondent took the lawyer's oath which includes the following clause, "To opposing parties and their counsel, I pledge fairness, integrity, and civility, not only in court, but also in all written and oral communications. . . ." Rule 402(k), SCACR. The United States Supreme Court has noted that lawyers are not entitled to the same First Amendment protections as laypeople. *See In re Snyder,* 472 U.S. 634, 644–45, 105 S.Ct. 2874, 2881, 86 L.Ed.2d 504 (1985). Moreover, attorneys' "[o]bedience to ethical precepts may require abstention from what in other circumstances might be constitutionally protected speech." *In re Sawyer,* 360 U.S. 622, 646–47, 79 S.Ct. 1376, 1388, 3 L.Ed.2d 1473 (1959) (Stewart, J., concurring). "Even outside the courtroom, . . . lawyers in pending cases [are] subject to ethical restrictions on speech to which an ordinary citizen would not be." *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1071, 111 S.Ct. 2720, 2743, 115 L.Ed.2d 888 (1991).

### A. Vague

"The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication." *State v. Albert,* 257 S.C. 131, 134, 184 S.E.2d 605, 606 (1971). "A law is unconstitutionally vague if it forbids or requires the doing of an act in terms so vague that a person of common intelligence must necessarily guess as to its meaning and differ as to its application." *Curtis v. State,* 345 S.C. 557, 572, 549 S.E.2d 591, 598 (2001) (citation omitted).

In *Grievance Administrator v. Fieger,* 476 Mich. 231, 719 N.W.2d 123 (2006), *cert. denied,* 549 U.S. 1205, 127 S.Ct. 1257, 167 L.Ed.2d 75 (2007), an attorney challenged the constitutionality of Michigan's "civility" and "courtesy" rules for lawyers. That court held, "Such a challenge cannot be successfully advanced here because there is no question that even the most casual reading of these rules would put a person clearly on notice that the kind of language used by Mr. Fieger would violate MRPC 3.5(c) and MRPC 6.5(a)." *Fieger,* 719 N.W.2d at 139. In this case, there is no question that even a casual reading of the attorney's oath would put a person on notice that the type of language used in Respondent's "Drug Dealer" e-mail violates the civility clause. Casting aspersions

on an opposing counsel's offspring and questioning the manner in which an opposing attorney was rearing his or her own children does not even near the margins of the civility clause. While no one argued it in this case, it could be argued that the language used by Respondent in the "Drug Dealer" e-mail constituted fighting words. Moreover, a person of common intelligence does not have to guess at the meaning of the civility oath. We hold, as the court held in *Fieger*, that the civility oath is not unconstitutionally vague.

## B. Overbroad

"The First Amendment overbreadth doctrine is an exception to the usual rules regarding the standards for facial challenges." *In re Amir X.S.*, 371 S.C. 380, 384, 639 S.E.2d 144, 146 (2006). Under the overbreadth doctrine, "the party challenging a statute simply must demonstrate that the statute could cause someone else—anyone else—to refrain from constitutionally protected expression." *Id.* (citation omitted). The overbreadth doctrine has "been implemented out of concern that the threat of enforcement of an overly broad law may deter or 'chill' constitutionally protected speech—especially when the overly broad law imposes criminal sanctions." *Id.* at 384–85, 639 S.E.2d at 146 (citation omitted). The overbreadth doctrine:

> ... permits a court to wholly invalidate a statute only when the terms are so broad that they punish a substantial amount of protected free speech in relation to the statute's otherwise plainly legitimate sweep—until and unless a limiting construction or partial invalidation narrows it so as to remove the threat or deterrence to constitutionally protected expression.

*Id.* at 385, 639 S.E.2d at 146–47 (citation omitted).

A court analyzing whether a disciplinary rule violates the First Amendment must balance "the State's interest in the regulation of a specialized profession against a lawyer's First Amendment interest in the kind of speech that was at issue." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1073, 111 S.Ct. 2720, 2744, 115 L.Ed.2d 888 (1991). "In those instances where a lawyer's unbridled speech amounts to mis-

conduct which threatens a significant state interest, a state may restrict the lawyer's exercise of personal rights guaranteed by the Constitutions." *In re Johnson,* 240 Kan. 334, 729 P.2d 1175, 1178 (1986) (*citing N.A.A.C.P. v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 340–41, 9 L.Ed.2d 405 (1963)). "A layman may, perhaps, pursue his theories of free speech . . . until he runs afoul of the penalties of libel or slander, or into some infraction of our statutory law. A member of the bar can, and will, be stopped at the point where he infringes our Canon of Ethics." *In re Woodward,* 300 S.W.2d 385, 393–94 (Mo.1957).

The interests protected by the civility oath are the administration of justice and integrity of the lawyer-client relationship. The State has an interest in ensuring a system of regulation that prohibits lawyers from attacking each other personally in the manner in which Respondent attacked Attorney Doe. Such conduct not only compromises the integrity of the judicial process, it also undermines a lawyer's ability to objectively represent his or her client. There is no substantial amount of protected free speech penalized by the civility oath in light of the oath's plainly legitimate sweep of supporting the administration of justice and the lawyer-client relationship. Thus, we find the civility oath is not unconstitutionally overbroad.

## Conclusion

We find Respondent violated Rule 7(a)(5), RLDE, Rule 413, SCACR, and Rule 8.4(e), RPC, Rule 407, SCACR, both of which provide that a lawyer may be disciplined for engaging in conduct tending to pollute the administration of justice or bring the legal profession into disrepute, and Rule 7(a)(6), RLDE, Rule 413, SCACR, which provides it is a ground for discipline for an attorney to violate the attorney's oath of office. Because we find Respondent's acknowledgement of misconduct and remorse to be sincere, we issue a private Letter of Caution with a finding of minor misconduct to Respondent. We publish this Letter of Caution in the *In re Anonymous* format so as to provide guidance to the bar. We

caution the bar that henceforth, this type of conduct could result in a public sanction.

Justice PLEICONES has filed a separate opinion.

Justice PLEICONES.

As I would impose no sanction or other requirement in connection with this matter, I respectfully decline to join in the opinion.