757 S.E.2d 388

SOUTH CAROLINA DEPARTMENT OF
SOCIAL SERVICES, Respondent,

v.

MICHELLE G. and Robert L., of whom
Michelle G. is the Appellant.

Appellate Case No. 2013–001383.

No. 27371.

Supreme Court of South Carolina.

Heard March 19, 2014.
Decided March 27, 2014.

500

Charles R. Griffin, Jr., of Anderson, for Appellant.

Kathleen J. Hodges, of Anderson, for Respondent.

Justice BEATTY.

This is an expedited appeal by a mother in a termination of parental rights (TPR) case.[1] The family court terminated Appellant's parental rights to her two minor sons and denied Appellant's motion to dismiss, in which she challenged the constitutionality of section 63–7–2570(1) of the South Carolina Code. On appeal, Appellant contends the TPR statute violates the Fourteenth Amendment and is void for vagueness. We affirm.

## I. FACTS

Appellant is the biological mother of four children: a daughter and a son who are now adults, and two minor sons who are

---

1. Robert L. is not a party to this appeal.

the subject of this TPR action. Appellant and Robert L. (Biological Father) were previously married and lived in North Carolina. After the divorce, their two oldest children, then minors, alleged Biological Father had sexually abused them. Appellant reported the allegations to authorities. A finding of abuse was made against Biological Father in North Carolina, and Appellant obtained custody of the children.

During this time, while Appellant was still living in North Carolina with her children, she met Kenneth G. (Stepfather) online. Stepfather lived in South Carolina. According to Appellant, Stepfather initially lied to her about his identity, and he was physically and sexually abusive to her when she went to visit him in South Carolina. For example, Stepfather demanded that Appellant perform sex acts for him via a webcam and that she include her daughter, and that Appellant have sex with other men. However, Appellant continued to visit Stepfather, reportedly due to his threat to help Biological Father regain custody of the children.

Despite these incidents, Appellant married Stepfather. On their wedding night, Stepfather raped Appellant's daughter in Appellant's presence. Appellant's daughter thereafter had two children with Stepfather as a result of ongoing sexual abuse. Appellant has admitted that she was aware of the rape incident and the fact that Stepfather is the biological father of her daughter's two children. In addition, Appellant has admitted that, on repeated occasions, she engaged in oral sex with her daughter and had sexual intercourse with her oldest son. Appellant has maintained these acts occurred due to threats or coercion by Stepfather. However, the incidents occurred over an extended period of time, and some of the incidents occurred via webcam when Stepfather was in another town. Appellant never reported any of this abuse to the police.

Appellant's three sons entered foster care on June 11, 2012 after the oldest son revealed to law enforcement that there had been sexual abuse in the home.[2] The South Carolina Department of Social Services (DSS) filed a summons and complaint dated August 29, 2012 seeking the termination of Appellant's parental rights to her three sons. Appellant filed

---

2. Stepfather was thereafter convicted of multiple charges of incest.

a motion to dismiss, arguing section 63–7–2570(1), the TPR provision pled in this case, was impermissibly vague in violation of the Fourteenth Amendment.

Appellant's oldest son was removed as a party because he turned eighteen prior to the hearing in this matter and was no longer subject to TPR. The matter proceeded as to Appellant's younger sons at a hearing held on April 4 and 5, 2013. By order dated May 9, 2013, the family court terminated Appellant's parental rights to her two minor sons. The court found there was clear and convincing evidence they had been harmed as defined in section 63–7–20(4) of the South Carolina Code and, because of the severity or repetition of the abuse or neglect, as provided by section 63–7–2570(1), it was not reasonably likely that the home could be made safe within twelve (12) months, and termination was in the children's best interests. The family court denied Appellant's motion to dismiss the action based on her allegation that section 63–7–2570(1) is unconstitutionally vague.

## II. STANDARD OF REVIEW

A state must prove a case for termination of parental rights by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Richberg v. Dawson*, 278 S.C. 356, 296 S.E.2d 338 (1982). Upon review, this Court is entitled to make its own determination whether the grounds for termination are supported by clear and convincing evidence. *S.C. Dep't of Soc. Servs. v. Cochran*, 364 S.C. 621, 614 S.E.2d 642 (2005). However, this scope of review does not require this Court to disregard the findings of the family court, which was in a better position to evaluate the credibility of the witnesses and assign weight to their testimony. *Charleston Cnty. Dep't of Soc. Servs. v. Jackson*, 368 S.C. 87, 627 S.E.2d 765 (Ct.App.2006).

## III. LAW/ANALYSIS

On appeal, Appellant argues the family court erred in denying her motion to dismiss this TPR action because section 63–7–2570(1) violates the Fourteenth Amendment to the United States Constitution. Appellant asserts section 63–7–2570(1) is unconstitutionally vague and violates her procedural

due process rights because it fails (1) to give sufficiently fair notice to one who would avoid its sanctions, and (2) to provide ascertainable standards to the trier of fact, here, the family court, in determining whether to terminate parental rights. In particular, Appellant points to the use of the undefined term "severity" in the statute and argues section 63–7–2570(1) "permits [TPR] to be wantonly and freakishly meted out to a parent whose conduct is subjectively, arbitrarily and capriciously determined to be 'Severe[.]' "

■ The United States Supreme Court has historically recognized "that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." *Santosky*, 455 U.S. at 753, 102 S.Ct. 1388. Accordingly, parents have a fundamental liberty interest in the care, custody, and management of their children. *Id.; see also S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 335, 741 S.E.2d 739, 745 (2013) (citing *Santosky*).

■ Statutes terminating parental rights must, therefore, comport with basic due process requirements guaranteed by the Fourteenth Amendment. *In re Maricopa Cnty. Juvenile Action Nos. JS–5209 & JS–4963*, 143 Ariz. 178, 692 P.2d 1027, 1032 (Ct.App.1984). "A statute whose terms are vague and conclusory does not satisfy due process requirements." *Id.*

■ "The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication." *In re Anonymous Member of S.C. Bar*, 392 S.C. 328, 335, 709 S.E.2d 633, 637 (2011) (citation omitted); *City of Beaufort v. Baker*, 315 S.C. 146, 152, 432 S.E.2d 470, 473 (1993) (citation omitted). Consequently, a statute may be unconstitutionally vague where "(1) it does not provide fair notice of the conduct proscribed," or "(2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed[.]" *In re Gentry*, 142 Mich.App. 701, 369 N.W.2d 889, 893 (1985).[3] In the current appeal, Appellant makes both of these contentions as to section 63–7–2570(1).

---

3. A statute may also be challenged on a third basis not at issue here— that "its coverage is overbroad and impinges on First Amendment freedoms." *In re Gentry*, 369 N.W.2d at 893; *see also Grayned v. City of*

■ This Court begins with a presumption of constitutionality. *Curtis v. State*, 345 S.C. 557, 569, 549 S.E.2d 591, 597 (2001) ("This Court has a limited scope of review in cases involving a constitutional challenge to a statute because all statutes are presumed constitutional and, if possible, will be construed to render them valid."). "[A] legislative act will not be declared unconstitutional unless its repugnance to the Constitution is clear and beyond a reasonable doubt." *Id.* at 570, 549 S.E.2d at 597.

■ "A law is unconstitutionally vague if it forbids or requires the doing of an act in terms so vague that a person of common intelligence must necessarily guess as to its meaning and differ as to its application." *In re Anonymous Member of S.C. Bar*, 392 S.C. at 335, 709 S.E.2d at 637 (citing *Curtis*, 345 S.C. at 572, 549 S.E.2d at 598). "[A]ll the Constitution requires is that the language convey sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices." *Curtis*, 345 S.C. at 572, 549 S.E.2d at 599; *cf. Maricopa*, 692 P.2d at 1034 ("The requirement that statutory language must be reasonably certain is satisfied 'by the use of ordinary terms which find adequate interpretation in common usage and understanding,' or if the term can be given meaning by reference to other definable sources." (internal citation omitted)).

■ "The constitutionality of a statute must be considered in light of the standing of the party who seeks to raise the question and of its particular application...." *Town of Mount Pleasant v. Chimento*, 401 S.C. 522, 535 n. 7, 737 S.E.2d 830, 839 n. 7 (2012) (citation omitted). "Standing is not a separate issue when the constitutionality of a statute is challenged under the due process clause, but is instead the foundation of the inquiry." *Id.*

---

*Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (stating vague laws infringe upon several important values, including (1) the need for notice, (2) the need for explicit standards, and (3) First Amendment considerations). The traditional rule of standing is relaxed for overbreadth claims involving First Amendment rights, where a party "simply must demonstrate that the statute could cause someone else— anyone else—to refrain from constitutionally protected expression." *In re Amir X.S.*, 371 S.C. 380, 384, 639 S.E.2d 144, 146 (2006).

 "One whose conduct clearly falls within the statutory proscription does not have standing to raise a void-for-vagueness challenge." *Id.* at 535, 737 S.E.2d at 839; *accord Curtis,* 345 S.C. at 572, 549 S.E.2d at 598; *see also In re Amir X.S.,* 371 S.C. 380, 385 n. 2, 639 S.E.2d 144, 146 n. 2 (2006) (stating the traditional rule of standing for constitutional attacks is that one to whom application of a statute *is* constitutional may not attack the statute on the ground that it *might* be unconstitutional when applied to *other* people or situations (citing *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960))). "A statute's constitutionality is judged on an objective, not subjective, basis." *Chimento,* 401 S.C. at 535 n. 6, 737 S.E.2d at 838 n. 6.

Thus, when raising a claim of unconstitutional vagueness, the litigant must demonstrate that the challenged statute is vague *as applied to his own conduct,* regardless of its potentially vague application to others. *In re Hanks,* 553 A.2d 1171, 1176 (Del.1989) (citing *Aiello v. City of Wilmington, Del.,* 623 F.2d 845, 850 (3d Cir.1980)).

 In the current appeal, Appellant points to section 63–7–2570(1)'s use of the word "severity" throughout her brief and contends the term is undefined and that the statute provides no ascertainable standard for the trier of fact to make a TPR determination.[4] Section 63–7–2570 of the South Carolina Code currently sets forth eleven enumerated grounds for terminating a parent's rights and provides in relevant part as follows:

> The family court may order the termination of parental rights upon a finding of one or more of the following

---

4. At the TPR hearing, Appellant argued the use of the terms "severity" *and* "repetition" made the statute unconstitutionally vague. However, on appeal to this Court, her brief appears to have abandoned any reliance on the term "repetition" and she instead focuses on the term "severity." In any event, the use of "repetition" in this context does not make the statute impermissibly vague as the undisputed testimony, including Appellant's own admissions, demonstrates that Appellant committed repeated sexual acts with her daughter and her oldest son. "Repetition" is a word that should be given its ordinary dictionary meaning. *See Webster's Third New International Dictionary of the English Language, Unabridged* 1924 (2002) (defining "repetition" as "the act or an instance of repeating something that one has already said or done").

grounds *and a finding that termination is in the best interest of the child:*

(1) The child or another child while residing in the parent's domicile has been *harmed* as defined in Section 63–7–20, and because of the *severity or repetition of the abuse or neglect,* it is not reasonably likely that the home can be made safe within twelve months. In determining the likelihood that the home can be made safe, the parent's previous abuse or neglect of the child or another child may be considered.

S.C.Code Ann. § 63–7–2570(1) (Supp.2013) (emphasis added).

Section 63–7–20(4) of the Code defines the terms "child abuse or neglect" and "harm" as used in the provision challenged here. It states in relevant part:

(4) "Child abuse or neglect" or "harm" occurs when the parent, guardian, or other person responsible for the child's welfare:

(a) inflicts or allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child, . . . .

(b) commits or allows to be committed against the child a sexual offense as defined by the laws of this State or engages in acts or omissions that present a substantial risk that a sexual offense as defined in the laws of this State would be committed against the child[.]

S.C.Code Ann. § 63–7–20(4) (2010).

In its order, the family court specifically found there was clear and convincing evidence that Appellant "had [engaged in] repeated acts of sexual relations with her [oldest] son . . . and [her] daughter . . . and that abuse was severe." In addition, Appellant "was present while her husband raped her daughter . . . and that abuse is severe." The court stated Appellant's oldest son and daughter were subject to abuse in both North Carolina and South Carolina, and that "[t]he children knew about the sexual abuse going on and that in itself is abuse and mental injury." The court found there was a substantial risk of harm for Appellant's two minor sons, and that it was "not reasonably likely that the home can be made safe within twelve (12) months." The court expressed concern

that, "[d]uring the testimony of [Appellant], at no time did she accept responsibility for the abuse," and that Appellant had failed to adequately protect her children, who had been abused by Appellant, Biological Father, and Stepfather. In these circumstances, the court found the termination of Appellant's parental rights was in the best interests of her minor sons. At the hearing in the matter, the family court further explained its reasoning as to the meaning of the terms used in the statute:

> And severity, [ ] having sexual intercourse with your son, I mean, I can't even believe I'm having to say this, ... that is definitely severe and I ... don't see how anybody could interpret that any differently. And having sexual intercourse with your daughter[;] being present while your husband is raping your child. All of that would definitely fall within the definition of severity and repetition.

■■■■ We agree with the family court's observations and find Appellant has no standing to pursue this constitutional challenge because Appellant's conduct clearly falls within the parameters of the acts proscribed by section 63–7–2570(1). A statute's words generally should be given their plain and ordinary meaning, and the only appropriate description of the abuse in this case is that it was "severe" under any common understanding of the term. *See Epstein v. Coastal Timber Co.*, 393 S.C. 276, 285, 711 S.E.2d 912, 917 (2011) ("Words in a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's application."); *Webster's Third New International Dictionary of the English Language, Unabridged* 2081 (2002) (defining "severity" as the "quality or state of being severe," and defining "severe" to mean "of a great degree or an undesirable or harmful extent," or "inflicting physical discomfort or hardship," or "inflicting pain or distress"); *see also People v. Weninger*, 243 Ill.App.3d 719, 183 Ill.Dec. 224, 611 N.E.2d 77, 83 (Ct.1993) ("A court will assume [ ] that the words used in a statute have their ordinary and popularly understood meanings, absent a contrary legislative intent. Also, in addition to the language used, consideration must be given to the legislative objective and the evil the statute is designed to remedy." (internal citations omitted)). Moreover, since it is undisputed that the abuse occurred

multiple times, and the statute refers alternatively to the "severity" or the "repetition" of the abuse or neglect, Appellant's conduct falls within the realm of the TPR statute due to the repetition of the abuse, regardless of its "severity."

## IV. CONCLUSION

We conclude the family court properly denied Appellant's motion to dismiss this TPR action based on her challenge to the constitutionality of section 63–7–2570(1). Because her conduct clearly falls within the parameters of the statute, she lacks standing to challenge the statute as being void for vagueness. Appellant does not otherwise challenge the findings of the family court and its TPR decision, and we hold those findings are supported by clear and convincing evidence and that TPR is in the best interests of the children. As a result, we affirm the order of the family court.

**AFFIRMED.**

TOAL, C.J., HEARN, J., and Acting Justice James E. Moore, concur. PLEICONES, J., concurring in result only.