**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Heather Corey, Appellant/Respondent,

v.

Kevin Corey, Respondent/Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2014-001461

———————————

Appeal From Greenville County
Robert N. Jenkins, Sr., Family Court Judge

———————————

Unpublished Opinion No. 2016-UP-050
Submitted December 21, 2015 – Filed January 25, 2016

———————————

**AFFIRMED**

———————————

N. Douglas Brannon, of Kennedy & Brannon, P.A., of Spartanburg, for Appellant/Respondent.

Joseph M. Ramseur, Jr. and Danielle Metoyer Mitchell, of Mitchell Ramseur, LLC, of Greenville, for Respondent/Appellant.

Bobby H. Mann, Jr., of Temple & Mann, of Greenville, Guardian ad Litem, pro se.

———————————

**PER CURIAM:** This cross appeal arises from an action by Heather Corey (Mother) seeking the termination of parental rights (TPR) against Kevin Corey (Father). Father counterclaimed for a change of custody. On appeal, Mother argues the family court erred in (1) disregarding the South Carolina Supreme Court's order limiting expert testimony about Father's psychosexual testing, (2) awarding grandparent visitation, (3) ordering expanded reunification with Father absent a change of circumstances, and (4) denying TPR and applying res judicata to a TPR action. Mother additionally argues the administrative judge for the family court erred by *sua sponte* amending a prior order and assigning a resident judge to preside over the TPR trial. Father argues the family court erred in (1) refusing to order a change of custody and (2) denying his request for attorney's fees. We affirm.

1. Mother argues the family court erred by disregarding the South Carolina Supreme Court's mid-trial order limiting expert testimony about Father's psychosexual testing. We disagree.

Father provided Mother with the results of his psychosexual testing by March 7, 2014. Before the March 24, 2014 portion of the trial, Mother requested a continuance, contending Father failed to timely provide the results of his psychosexual testing and Mother could not effectively cross-examine Father and two of his expert witnesses. The family court denied the continuance. Mother filed a notice of appeal with the supreme court and petitioned for supersedeas. In denying Mother's petition for supersedeas, the supreme court stated it was "confident the family court [would] take appropriate measures to safeguard [Mother's] due process rights and allocate additional hearing time to give the parties the ability to address the results of the testing once the results [were] provided to [Mother]." *Heather C. v. Kevin C.*, S.C. Sup. Ct. Order dated March 24, 2014.

We find the family court did not err because the supreme court's order did not limit the presentation of testimony regarding Father's psychosexual testing, and Mother had adequate time to review the records and prepare for examination of the expert witnesses. In particular, Mother had adequate time to prepare for Doctor Richard Dwyer, the expert who conducted the psychosexual testing at issue. Moreover, Mother extensively examined two of her own experts in rebuttal, including Doctor Selman Watson, the expert with whom Mother consulted regarding the psychosexual testing results. Furthermore, although the family court denied the continuance, Mother was effectively provided an additional month to prepare for these witnesses, who were examined during the April 21-22, 2014 portion of the

trial.  Although the supreme court's order was not a directive, we find the family court complied with the spirit of the order and took "appropriate measures to safeguard [Mother's] due process rights and allocate additional hearing time to give the parties the ability to address the results of the testing once the results [were] provided to [Mother]."  Accordingly, we affirm.

2.  Mother argues the family court erred in awarding visitation to the paternal grandparents.  She further asserts the visitation award violated her due process rights because Father did not request that relief in his pleadings, the grandparents were not parties, and Mother lacked notice of the issue during trial.  Mother additionally argues the family court erred in awarding grandparent visitation over her objection when the court made no findings of unfitness or compelling circumstances.  We disagree.

On appeal from the family court, this court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *see also Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Nonetheless, this court is not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 652.  The burden is upon the appellant to convince this court that the preponderance of the evidence is against the findings of the family court.  *Id.*  "In appeals from the family court, the appellate court has the authority to find the facts in accordance with its view of the preponderance of the evidence."  *Ex parte Morris*, 367 S.C. 56, 61, 624 S.E.2d 649, 652 (2006).  "This broad scope of review does not, however, require the appellate court to disregard the findings of the family court."  *Id.*  "This degree of deference is especially true in cases involving the welfare and best interests of a minor child."  *Id.* at 62, 624 S.E.2d at 652.

First, we find the family court did not violate Mother's due process rights in awarding visitation to the paternal grandparents when they were not made parties until after the trial.  In Father's counterclaim, he requested as an alternative to granting him custody that the children be placed in the custody of the paternal grandparents.  *See Bass v. Bass*, 272 S.C. 177, 180, 249 S.E.2d 905, 906 (1978) ("Due process requires that a litigant be placed on notice of the issues which the court is to consider."); *see also Middleton v. Johnson*, 369 S.C. 585, 594, 633 S.E.2d 162, 167 (Ct. App. 2006) ("Under the penumbra of custody is the lesser included right to visitation.").  Further, both grandparents testified concerning their ability to care for the children and their desire to have relationships with the children, and Mother had the opportunity to cross-examine them on those issues.

Thus, Mother had adequate notice that grandparent visitation was an issue before the court and her due process rights were not violated.

Second, we find the family court did not err in awarding the paternal grandparents visitation. *See Camburn v. Smith*, 355 S.C. 574, 579-80, 586 S.E.2d 565, 568 (2003) ("Before visitation may be awarded [to the grandparents] over a parent's objection, one of two evidentiary hurdles must be met: the parent must be shown to be unfit by clear and convincing evidence, or there must be evidence of compelling circumstances to overcome the presumption that the parental decision is in the child's best interest[s].").  We initially note Mother was not shown by clear and convincing evidence to be unfit, and the family court made no such finding.  *See* S.C. Code Ann. § 63-3-530(33) (Supp. 2015) (stating the family court must find the child's parents are unfit by clear and convincing evidence or compelling circumstances exist to "overcome the presumption that the parental decision is in the child's best interest[s]").

However, the circumstances here are sufficiently compelling to overcome Mother's decision on visitation.  *See Camburn*, 355 S.C. at 579, 586 S.E.2d at 568 ("The fact that a child may benefit from contact with the grandparent, or that the parent's refusal is simply not reasonable in the court's view, does not justify government interference in the parental decision."); *id.* at 580, 586 S.E.2d at 568 (reversing award of grandparent visitation when no compelling circumstances were present to overcome the presumption that the decision by the fit parents was in the children's best interests); *see also* § 63-3-530 (33) (requiring the presence of compelling circumstances before the family court may award grandparent visitation over a fit parent's objection).  In its order, the family court found it in the children's best interests to be reunited with the paternal grandparents because it would assist in the reunification process between Father and the children, the grandparents "have demonstrated love" for the children, and the grandparents "previously had a good relationship with their grandchildren" before the divorce.  We agree.

The fact the grandparents demonstrated love and previously maintained a good relationship with the children—standing alone—does not create compelling circumstances to overcome Mother's decision regarding visitation with the grandparents.  *See Camburn*, 355 S.C. at 579, 586 S.E.2d at 568 (noting "significant harm to the child" as an example of a compelling circumstance that may overcome the presumption that a fit parent's decision regarding visitation is in the child's best interests).  However, when combined with the impact visitation with the paternal grandparents would have on advancing the reunification process with Father following nearly four years of separation and sexual abuse allegations,

the circumstances are sufficiently compelling to overcome the presumption that Mother's decision on visitation was in the children's best interests. We find fostering a relationship between the children and the paternal grandparents as a way to assist the children's relationship with Father is sufficiently compelling to justify ordering visitation. *Cf. Marquez v. Caudill*, 376 S.C. 229, 249, 656 S.E.2d 737, 747 (2008) (holding a biological parent's death and an attempt to maintain ties with that parent's family may be compelling circumstances justifying ordering grandparent visitation over a fit parent's objection). However, we emphasize the family court's order grants only therapeutic visitation coordinated by the counselor to serve as a remedial component in facilitating Father's relationship with the children. It does not grant a separate visitation to the grandparents in addition to that of Father. Accordingly, we find the circumstances here sufficiently compelling to justify the award of visitation to the paternal grandparents.

3. Mother next argues the family court erred in ordering reunification visitation between Father and the children and expanding the visitation beyond the prior final order absent a change of circumstances, and she requests the prior merits order be reinstated. We disagree.

"As with child custody, the welfare and best interests of the child are the primary considerations in determining visitation." *Paparella v. Paparella*, 340 S.C. 186, 191, 531 S.E.2d 297, 300 (Ct. App. 2000). When the court has previously established visitation, the moving party must show a change of circumstances to warrant a change of visitation. *Ingold v. Ingold*, 304 S.C. 316, 320, 404 S.E.2d 35, 37 (Ct. App. 1991).

We initially find the family court did not expand Father's prior visitation beyond what the order on merits intervention awarded Father. The agreement reflected in the original final order provided,

> Father shall be allowed visitation with the minor children as directed by the children's counselor, Linda Hutton. Linda Hutton shall determine the course of reunification to include when and how Father resumes contact with the minor children (to include both indirect and direct contact and visitation). The parties agree this process will begin with therapeutic visitation . . . when [Linda Hutton] deems it appropriate.

The order additionally appointed Hutton to "facilitate a re-introduction of Father to the children as she deem[ed] appropriate."

In the final order following the TPR trial, the family court ordered Father to have visitation that would "eventually be as close as possible to the original agreement." The order provided the Guardian ad Litem (GAL) would select a counselor/therapist based on Father's and Mother's recommendations within fifteen days, and the selected counselor would "facilitate reunification of the children with Father" and "facilitate visitation between Father and the minor children and . . . determine the course of reunification to include when and how Father resumes contact with the minor children . . . ." Although the court required no further testing before therapeutic counseling could begin, it ordered the parties to cooperate with the counselor's recommendations regarding "mental health treatment of any nature related to the restoration of the family," including co-parenting counseling, family counseling, and individual psychological evaluation and treatment.

We find the family court's order still places the authority to order visitation with the children's therapist when he or she deems it appropriate. The order issued following the TPR trial substantially reflects the same visitation plan Mother now requests be reinstated. Although a substantial change of circumstances is necessary for the court to modify visitation, we find the family court did not modify the visitation order in place. *See Ingold*, 304 S.C. at 320, 404 S.E.2d at 37 (stating the moving party must show a change of circumstances to warrant modifying visitation).

Further, we find a preponderance of the evidence supports the family court's decision to grant Father visitation. *See Lewis*, 392 S.C. at 385, 709 S.E.2d at 652 (stating the burden is upon the appellant to convince this court the preponderance of the evidence is against the findings of the family court). Although the children's counselors testified the children would likely regress if required to engage in visitation with Father, the GAL and Mother's own expert, Dr. Watson, testified a relationship with Father may be beneficial if the children's safety could be assured. Additionally, the family court ordered therapeutic counseling that would include education for the parents "on appropriate boundaries" with the children, each other, and other family members and required the parties to cooperate with any recommendations regarding mental health treatment. As the GAL noted, while the immediate impact on the children from contact with Father is a significant consideration, the issue is whether the children's best interests are served by a long-term relationship with Father. *See Paparella*, 340 S.C. at 191, 531 S.E.2d at 300

(stating the children's best interests are the paramount considerations in determining visitation); *Watson v. Poole*, 329 S.C. 232, 240, 495 S.E.2d 236, 240 (Ct. App. 1997) ("The family court is given wide latitude to take whatever actions it deems necessary in the best interest[s] of the child.").

Furthermore, the results of Father's ABLE assessment[1] indicated Father "did not show interest in elementary or pre-school age children," and responded normally in the adult and adolescent groups. Father scored a four percent on the ABLE assessment. Dr. Dwyer explained a low score on the ABLE assessment showed the subject is less similar to people who have tried to justify sexual activity with children. Although Mother has asserted Father received inadequate treatment, she also believes treatment will be ineffective until he admits to the abuse, which may never happen. This case presents complicated questions and a perfect solution does not exist. Nonetheless, the family court did not err in ordering this visitation plan given the complexities in the case. We find the children's best interests are served and their safety assured with the visitation order in place because it allows a therapist to determine when contact would begin with Father. Consequently, we affirm the family court's granting of therapeutic visitation.

4. Mother argues the family court erred in denying the termination of Father's parental rights. Specifically, Mother argues the court erroneously found the abuse was not repetitive or continual. Mother additionally contends the family court erred in applying res judicata to a TPR action.[2] We disagree. We find the family court did not err in denying TPR because Mother did not present clear and convincing evidence establishing a TPR ground or that it was in the children's best interests.

"Because terminating the legal relationship between natural parents and a child is one of the most difficult issues an appellate court has to decide, great caution must be exercised in reviewing termination proceedings[,] and termination is proper only when the evidence clearly and convincingly mandates such a result." *S.C.*

---

[1] The ABLE Assessment is designed to measure sexual interest and collect information about abusive and sexual problem behaviors.

[2] The family court's findings that the abuse was not repetitive or severe and TPR was not the in children's best interests are dispositive. Accordingly, we need not address the argument concerning res judicata and estoppel. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting an appellate court need not address remaining issues when disposition of a prior issue is dispositive).

*Dep't of Soc. Servs. v. Roe*, 371 S.C. 450, 455, 639 S.E.2d 165, 168 (Ct. App. 2006).

> Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of facts a firm belief as to the allegations sought to be established. Such measure of proof is intermediate, more than a mere preponderance but less than is required for proof beyond a reasonable doubt . . . .

*Loe v. Mother, Father, & Berkeley Cty. Dep't of Soc. Servs.*, 382 S.C. 457, 465, 675 S.E.2d 807, 811 (Ct. App. 2009) (quoting *Anonymous (M-156-90) v. State Bd. of Med. Exam'rs*, 329 S.C. 371, 374 n.2, 496 S.E.2d 17, 18 n.2 (1998)).

The family court may order TPR upon finding at least one statutory ground for TPR is satisfied and also finding TPR is in the best interests of the child. S.C. Code Ann. § 63-7-2570 (Supp. 2015). The family court may order TPR upon finding "[t]he child or another child while residing in the parent's domicile has been harmed . . . and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months." S.C. Code. Ann. § 63-7-2570(1). Harm occurs when the parent "inflicts or allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child." S.C. Code Ann. § 63-7-20(4) (2010).

We find Mother did not establish either a statutory ground for TPR by clear and convincing evidence or that TPR is in the children's best interests. The parties have engaged in nearly five years of litigation, in which Mother has attempted to prove Father is a sexual offender, Father has contended Mother committed parental alienation, and both parties have presented extensive expert testimony. The children have seen multiple therapists over the last several years, and each therapist testified at trial that the children disclosed abuse that was specific as to perpetrator, time, and location. However, the transcripts of the children's forensic interviews indicate some inconsistencies in the disclosures, which Father's experts noted in their testimony. Although Mother contends the 19-1-180[3] order "contains specific

---

[3] *See* S.C. Code Ann. § 19-1-180(B)(2)(a)-(b) (2014) (stating a child's out-of-court statement concerning an act of alleged abuse is admissible if the child is unavailable to testify and the child's statement is "shown to possess particularized guarantees of trustworthiness").

findings of the children's credibility," the family court's order involved the admissibility of the children's out-of-court statements but was not a finding that abuse occurred.

Certainly, if Father sexually abused the children, it would amount to harm as defined in the TPR statute. *See* S.C. Code Ann. § 63-7-20(4) (stating harm occurs when the parent "inflicts or allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child"). However, Mother did not prove by clear and convincing evidence that Father harmed the children and his home cannot be made safe within twelve months because of the repetition or severity of the harm given the inconsistencies presented in the children's forensic interviews and the conflicting expert testimony. *See S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999) (stating the grounds for TPR must be proven by clear and convincing evidence); *Loe*, 382 S.C. at 465, 675 S.E.2d at 811 ("Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of facts a firm belief as to the allegations sought to be established." (quoting *Anonymous (M-156-90)*, 329 S.C. at 374 n.2, 496 S.E.2d at 18 n.2)); *cf. S.C. Dep't of Soc. Servs. v Michelle G.*, 407 S.C. 499, 503, 509-10, 757 S.E.2d 388, 390-91, 393-94 (2014) (affirming TPR and finding the appellant's conduct satisfied the "repetition" portion of the TPR statute when it was undisputed the appellant sexually abused the minor children multiple times); *Richland Cty. Dep't of Soc. Servs. v. Earles*, 330 S.C. 24, 33-34, 496 S.E.2d 864, 869 (1998) (affirming TPR and finding the evidence established the mother "repetitively and severely, physically and sexually abused [the] children" when one child disclosed a "graphic and detailed" description of the sexual abuse that occurred "all their lives").

Finally, we find terminating Father's parental rights would not be in the children's best interests. *See S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000) (stating in a TPR case, the best interests of the children are the paramount consideration). Although multiple therapists testified the children would require additional therapy if required to engage in visitation with Father, several other experts testified the children would suffer a detriment from eliminating a relationship with their Father entirely. Specifically, the GAL opposed TPR, stating, "I'm not hopeful that [Father] and the children will be able to reconcile . . . . However, I believe there is an inherent benefit to having a father." He indicated concern about TPR if Father did not commit the abuse; however, he continued, "But let's say that it did happen[.] Isn't there some value? Couldn't there be some training, some teaching, some behavior to allow them to

have a father in their lives again?" Dr. Watson additionally testified a potential solution would be for the children to continue therapy, and learn proper touching rules and how to protect themselves, while Father engaged in therapy to learn to assure the children's comfort and safety. Dr. Watson also opined the father-child relationship was worth repairing if Father was not a threat. We find the children's best interests would not be served by terminating Father's parental rights when alternatives remain. Thus, the family court did not err in finding TPR was not in the children's best interests, and we affirm the denial of TPR.

5. Mother argues the chief administrative judge erred in *sua sponte* amending a prior order and assigning a resident judge instead of a visiting judge to preside at the TPR trial. We disagree. The South Carolina Supreme Court's order specifically authorizes the chief administrative judge for the family court to set the trial rosters, designate which presiding judge shall hear the trial rosters, and resolve scheduling problems that arise. *See* Order RE: Duties of Family Court Chief Judges for Administrative Purposes, 2012-11-21-06 (S.C. Sup. Ct. Order dated Nov. 21, 2012) (authorizing the chief administrative judge for family court to designate which presiding judge shall hear the trial rosters and to resolve scheduling problems). Thus, we find the chief administrative judge did not err in amending the prior order and assigning a resident judge.

6. Father argues the family court erred in failing to find a substantial change in circumstances warranting a change of custody. We disagree. "[T]o grant a change in custody, there must be a showing of changed circumstances occurring subsequent to the entry of the divorce decree." *Latimer v. Farmer*, 360 S.C. 375, 381, 602 S.E.2d 32, 35 (2004). "[W]hen a non-custodial parent seeks a change in custody, the non-custodial parent must establish the following: (1) there has been a substantial change in circumstances affecting the welfare of the child and (2) a change in custody is in the overall best interests of the child." *Id.* "The change of circumstances relied on for a change of custody must be such as would substantially affect the interest[s] and welfare of the child." *Id.*

We find the family court did not err in denying Father's request for a change in custody. Father contended at trial that the family court should order a change of custody because Mother was committing parental alienation. The family court concluded Mother was not committing parental alienation given the conflicting expert testimony, Mother's psychological evaluation, and Mother's testimony that she sought only to protect the children and not to harm Father. Although Father presented extensive expert testimony on parental alienation and Mother continuously refused to comply with the agreement originally reached, the expert

testimony on parental alienation was conflicting, and nearly every expert noted it was not a well-defined condition. Further, neither any of the therapists nor the GAL believed Mother was committing parental alienation but was only seeking to protect her children. *See Brown v. Brown*, 412 S.C. 225, 239, 771 S.E.2d 649, 656 (Ct. App. 2015) (stating it is appropriate for the family court to consider who has been the primary caretaker as well as the opinions of third parties, such as the GAL and expert witnesses, making custody determinations).

Further, the family court considered the testimony of Mother, the children's therapists, and the children's teachers that both children were doing well in school and thriving. *See Shirley v. Shirley*, 342 S.C. 324, 330, 536 S.E.2d 427, 430 (Ct. App. 2000) (stating in determining custody, "the family court should consider how the custody decision will impact all areas of the child's life, including physical, psychological, spiritual, educational, familial, emotional, and recreational aspects"); *id.* (stating the controlling considerations in all child custody controversies are the children's welfare and best interests). We find the family court's findings regarding custody and whether Mother committed parental alienation are supported by the record, and we affirm the denial of the change of custody. *See Brown*, 412 S.C. at 239, 771 S.E.2d at 657 (stating "child custody decisions are matters left largely to the discretion of the family court" even though "this court has jurisdiction to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence").

Finally, we find *Watson v. Poole* is distinguishable from the present case. 329 S.C. at 234, 238-39, 495 S.E.2d at 237, 239-40 (finding the "conditions [were] inherently injurious to the child's best interest[s] and constitute[d] a change of circumstances warranting a change of custody" when the mother continued to pursue unfounded sexual abuse allegations and sought to terminate the father's visitation rights). Unlike in *Watson*, multiple counselors in this case testified to the children disclosing sexual abuse, and the children in this case were much older and capable of indicating whether abuse occurred. Though the children's forensic interviews contained inconsistencies, four therapists who each provided counseling to the children testified to disclosures. *See id.* at 236 & n.4, 495 S.E.2d at 238 & n.4 (noting the counselor who initially reported the father had sexually abused the daughter later concluded the father had not abused the daughter). Although in both cases the mother continued to pursue sexual abuse allegations and remove the father from the children's lives, here, Mother is relying on the opinions of multiple professionals that the children's best interests are served if they do not have contact with Father. *See id.* at 234-35, 495 S.E.2d at 237-38 (stating the mother sought to terminate the father's visitation rights even though no physical evidence of sexual

abuse was ever found, and she admitted "at least ten findings had been made that [the father] never harmed the child"). Finally, in this case, the GAL opined the children may be able to develop a relationship with Father through a therapeutic visitation plan and opposed removing the children from Mother's custody. *Cf. id.* at 239, 495 S.E.2d at 240 (noting the GAL's testimony that the child would only be able to develop a relationship with the father outside of the mother's home). Thus, the family court properly denied Father's request for a modification of custody.

7. Father argues the family court erred in denying his request for attorney's fees. We disagree. The family court considered the factors outlined in *Glasscock v. Glasscock*, 304 S.C. 158, 161 n.1, 403 S.E.2d 313, 315 n.1 (1991), finding both parties received beneficial results and neither party was in a position to pay the fees incurred. In particular, Mother did not succeed in her claim for TPR, but Father also did not gain custody of the children. Similarly, Father succeeded in being granted visitation with the children, but the appointed counselor will determine when and how Father is to resume contact. *See id.* (stating the court should consider the beneficial results obtained by the attorney).

Furthermore, Father and Mother have engaged in protracted litigation since 2010, including the nine day TPR trial, and both have likely incurred significant expenses as a result. Mother's net monthly income was substantially lower than Father's net monthly income, and both parties' financial declarations indicate more monthly expenses than net income earned. *See id.* (stating the family court should consider the parties' financial conditions, ability to pay, and the effect an award of fees would have on their standards of living). Mother and Father each obtained beneficial results but not all of the relief requested, and an award of attorney's fees would significantly impact each party. Accordingly, we affirm the family court's denial of Father's request for attorney's fees.

**AFFIRMED.**[4]

**FEW, C.J., and LOCKEMY, and MCDONALD, JJ., concur.**

---

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.